### In re FRONTIER ENTERPRISES, INC., Debtor.

**Bankruptcy No. 183–01782.**

United States Bankruptcy Court, C.D. Illinois.

Feb. 13, 1987.

357

Lawrence C. Rippe, Springfield, Ill., for U.S. Small Business Admin.

Andrew Covey Baymiller, Christison & Radley, Peoria, Ill., for trustee.

Thomas L. Perkins, Kavanagh, Scully Sudow White & Frederick, P.C., Peoria, Ill., for Peat Marwick, Mitchell & Co.

## MEMORANDUM OPINION AND ORDER

ROBERT E. GINSBURG, Bankruptcy Judge.

### THE FACTS

The only thing striking about the facts of this case is given the staggering number of bankruptcy cases filed every year, the problem now before the Court does not occur much more often.

The facts are relatively simple and are not in dispute. Frontier Enterprises, Inc. (the "Debtor") filed a voluntary Chapter 7 petition on October 28, 1983. William H. Christison was appointed as trustee for the debtor. The Debtor's major creditor was the United States Small Business Association, (the "SBA"). The SBA filed a claim in excess of $330,000.00 which purported to be a secured claim. Although the trustee never objected to the SBA's claim, obviously, the SBA could be a secured creditor only to the extent of the value of the collateral securing its claim. The remain-

der of its claim was unsecured. *See generally* 11 U.S.C. § 506(a), (d). In January of 1984, the trustee sold the SBA's collateral pursuant to Court order for $24,359.09. Other assets of the debtor, apparently not subject to the SBA's lien, were also liquidated.

The trustee then set about closing the estate. He filed his final report, which recognized the SBA's secured and unsecured claims. This led to the drafting of a distribution order which was presented to the Court and entered by it on March 28, 1985 (the "Distribution Order").[1] Somehow, the SBA was mistakenly omitted from the Distribution Order. As a result, it never received either a copy of the order prior to the distribution or any share of the distribution.

The omission of the SBA from the Distribution Order meant that the proceeds generated from the sale of its collateral were distributed to the unsecured creditors other than the SBA.[2] All priority creditors were paid in full and the debtor's general unsecured creditors, who would have received nothing had the SBA been properly included in the Distribution Order, received a dividend of approximately 8½% on their claims.[3]

On April 25, 1986, after realizing that it had not received any payment from the Debtor's estate, the SBA wrote the trustee asking when the proceeds from the sale of its collateral would be paid over to it.[4] The trustee investigated, learned for the first time that the SBA inadvertantly had been omitted from the Distribution Order, and filed a motion to reopen the bankruptcy proceeding to amend the Distribution Order to include the SBA. On September 24, 1986 this Court vacated the Distribution Order pursuant to 11 U.S.C. § 350 and Bankruptcy Rules 9024 and 3008. The Court entered an amended distribution order (the "Amended Order") which, *inter alia*, ordered that the SBA receive the proceeds from the sale of its collateral.

The result of the Amended Order is that all priority creditors, including the SBA to the extent of its security, will be paid in full and tax creditors will receive approximately 85% of the value of their claims. To comply with the Amended Order the trustee, undoubtedly, will first try to recover from the general unsecured creditors 100% of the distribution previously made to them and from the priority tax claimants 15% of the distribution previously made to them under the Distribution Order.[5] On October 8, 1986 Peat, Marwick, Mitchell & Co. ("Peat, Marwick"), a general unsecured creditor, filed a motion pursuant to Bankruptcy Rule 9014 for a rehearing on the trustee's motion to reopen the case. As

---

1. The Bankruptcy Judge who entered that order, the Honorable Max Lipkin, has since retired. The undersigned, a Bankruptcy Judge in the Northern District of Illinois, is sitting in this case by designation as a visiting Bankruptcy Judge in this district.

2. Because of deficiencies in the value of its collateral, the SBA is also the Debtor's largest unsecured creditor.

3. Had the SBA's secured and unsecured claims been properly included in and computed in the Distribution Order, the proceeds of the collateral would have gone, of course, entirely to the SBA. The proceeds resulting from the liquidation of the debtor's unencumbered assets would have gone to pay priority claims. Since there would not have been enough to pay priority tax claims in full, the general unsecured creditors would have received nothing.

4. The SBA had previously queried the trustee on the same subject in the Spring of 1985 and had been advised by the trustee that the estate would be closed and payment forthcoming shortly. As it turned out, the trustee was half right.

5. To date there have been no orders for return of monies received as such would apparently require adversary proceedings. See Bankruptcy Rule 7001(1). This may prove to be like trying to put the proverbial genie back in the bottle. The Court expresses no opinion on whether the trustee and/or the Bankruptcy Clerk's office which actually prepared the Distribution Order would be liable for any deficiency. The Court does note that to minimize a repeat of this problem, trustees in this district are now required to review distribution orders prepared by the clerk's office and to sign a certificate attesting to that review.

might be expected, both the trustee and the SBA oppose Peat, Marwick's motion.[6]

APPLICABLE LAW

 Section 350(b) of the Bankruptcy Code provides "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Discretion to reopen a case for cause rests with the bankruptcy court. *In re Thomas,* 204 F.2d 788, 791 (7th Cir.1953); *Matter of Pagan,* 59 B.R. 394, 396 (D.P.R.1986); *In re Stanke,* 41 B.R. 379, 389 (Bankr.W.D.Mo. 1984); *Matter of Carter,* 38 B.R. 636, 638 (Bankr.D.Conn.1984). Peat, Marwick argues that in the interests of allowing creditors to be able to rely on the finality of judicial orders, this Court should decline to exercise its discretion to reopen the case. The trustee and the SBA argue that this Court should reopen to correct a manifest error and to get back the SBA's money which was erroneously distributed. This Court concludes that, based upon the facts presented, a balancing of the equities involved versus the significance of affording finality to creditors mandates a reopening of the case. "Cause" clearly exists here to reopen this case in order to attempt to correct a blatant error in the distribution of the proceeds of this estate. Under the Distribution Order the general unsecured creditors received a dividend on their claims when they should have received nothing. The taxing bodies recovered 100% on their priority claims when they only should have recovered 85%. It is beyond argument that somebody made a mistake by omitting the SBA from the Distribution Order.[7] It is beyond argument that money that rightfully belonged to the SBA

went to creditors other than the SBA. It is hard to imagine more compelling cause for reopening a case. This is not a case for discretionary refusal to reopen.

 Peat, Marwick also asserts that the SBA has been guilty of laches in failing to pursue diligently with the trustee the question of why it received nothing from the proceeds of its collateral.[8] At the outset, let it be clear that the Court is aware the lapse of time should be given great consideration in connection with motions to reopen cases, and the Court has considered lapse of time as a factor in determining whether or not to exercise its discretion to reopen the case. *Reid v. Richardson,* 304 F.2d 351, 355 (4th Cir.1962). The Court has determined that the passage of time on the facts of this case is not sufficient to require this Court to decline to exercise its discretion to reopen the case.

 Application of the doctrine of laches which Peat, Marwick seeks to invoke differs from the question of whether a discretionary analysis of the lapse between the erroneous order and these proceedings precludes reopening. The requirements for the application of laches are quite specific. Laches focuses on both what SBA did and how SBA's actions or lack thereof affected Peat, Marwick. To succeed on the affirmative defense of laches Peat, Marwick must show both that the SBA exercised a lack of diligence in contacting the trustee and that Peat, Marwick has been prejudiced by that undue delay. *Costello v. United States,* 365 U.S. 265, 81 S.Ct.

**6.** Because the Court's order to reopen the proceeding was issued without notice to all creditors, the Court ordered that a copy of the order reopening the case with an explanatory notice be sent to all creditors in order to give all creditors an opportunity to be heard on the question of reopening the case, since reopening may lead to a requirement that certain creditors return all or some of the dividend they received in this case. Given the lack of prior notice, it is fairer to treat Peat, Marwick's motion as an objection to the trustee's motion to reopen and to place the burden of proving cause for reopening the case on the trustee. Thus, the Court

views this as an objection to the original motion rather than a motion for a rehearing.

**7.** The question of who made the mistake is not before the court at this time.

**8.** Since laches is an affirmative defense, the burden of proof in this regard lies with Peat, Marwick. *Jefferies v. Chicago Transit Authority,* 770 F.2d 676, 679 (7th Cir.1985); *Equal Employment Opportunity Commission v. Great Atlantic & Pacific Tea Company,* 735 F.2d 69, 80 (3rd Cir.1984).

534, 5 L.Ed.2d 551 (1961).[9] Approximately 13 months elapsed between the entry of the Distribution Order and the time the SBA alerted the trustee to the mistake. It has been held that a creditor who has general knowledge of a debtor's bankruptcy proceeding has no duty to inquire about further court action. *New York v. New York, New Haven & Hartford Railroad Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953). The creditor has a "right to assume" that he will receive all notice required by statute before his claim will be barred. *Id. See also Reliable Electric Co. v. Olson Construction Co.,* 726 F.2d 620 (10th Cir.1984). Accordingly, the SBA should have been able to rely on receiving either the proper dividend from the Court or notice that an objection had been made to its claim. Absent either notice of any problem with its claim or notice that a distribution order had been entered, it is not reasonable to require SBA to inquire about the status of its claim on anything more than an annual basis.[10] In addition, the SBA is a governmental entity. It is common knowledge that the wheels of government grind slowly. Non-bankruptcy rules and statutes recognize this.[11] While the sums in question are significant to most creditors, the failure to receive some $25,000 is not likely to be readily noticed by an agency the size of the SBA. Simply stated, it takes a while in a bureaucracy for the message that the money has not been received to work its way to the person responsible for contacting the trustee. Any due diligence analysis should keep that fact in mind. The Court concludes that on the facts of this case, the SBA

acted with sufficient diligence in pursuing its claims against this estate.

Regardless of whether the SBA failed to act with due diligence in pursuing its claims against the estate, Peat, Marwick has failed to show how the SBA's delay in calling the matter to the trustee's attention worked to Peat, Marwick's prejudice. Due to a clerical error, Peat, Marwick received something in a case where it apparently should have received nothing. It is likely that it will have to return what it received and will wind up with what is should have gotten in the first place, nothing. Peat, Marwick has not shown that it detrimentally relied on the receipt of the improper dividend or that witnesses or evidence that could show it should be allowed to keep what it received became unavailable during the period the SBA sat on its rights.

In fact what seems to have happened here is Peat, Marwick got a windfall at the government's expense. The doctrine of laches was designed to prevent inequities, not to protect windfalls. It does not and should not apply to the facts of this case. Peat, Marwick has not been prejudiced by the delay.

For the foregoing reasons, the motion of Peat, Marwick for reconsideration of this Court's order reopening this case is denied.

---

**9.** It may be that the laches claim is premature. What is before the court is the trustee's motion to reopen, not SBA's motion to reopen. Arguably any consideration of laches on the part of SBA should await recovery actions by or against the trustee.

**10.** A claim in a bankruptcy case stands as allowed unless an affirmative objection is filed to the allowance of the claim. 11 U.S.C. § 502(a). *See In re Wells,* 51 B.R. 563, 566 (D.Colo.1985). Accordingly, the SBA was entitled to conclude that its claim had been properly filed and al-

lowed and that it would receive the appropriate distribution on the claim in due course.

**11.** *See e.g.* Fed.R.App.P. 4(a)(1) which provides that appeals as of right may be given on a motion made within 30 days from entry of judgment or order unless the United States or its officers or agencies are parties, where the rule allows 60 days. *See also* Fed.R.Civ.P. 12(a) (United States as party given 60 days to answer a complaint rather than the 20 days afforded to nongovernmental parties).