In re Isaac **DANIELS**, Jr., Naomi Daniels, Debtors.

**NISSAN MOTOR ACCEPTANCE CORPORATION**, Movant,

v.

Isaac **DANIELS**, Jr., Naomi Daniels, Respondents.

**Bankruptcy No. 91–60283.**

United States Bankruptcy Court, S.D. Georgia, Statesboro Division.

Feb. 17, 1994.

Caitlin L. Decatur, Atlanta, GA, Michael J. Hall, Statesboro, GA, for movant.

Ronald A. Majors, Ludowici, GA, for debtors/respondents.

### *ORDER*

JOHN S. DALIS, Bankruptcy Judge.

By motion, Nissan Motor Acceptance Corporation ("Nissan") seeks to reopen this Chapter 13 case, to have debtors' discharge vacated, to amend its previously filed proof of claim, and to have a trustee appointed to administer distributions for the remaining period of the Chapter 13 plan. After having heard and considered the evidence presented, I enter the following order denying Nissan's motion to reopen.

### *Findings of Fact*

On May 15, 1991 debtors Isaac and Naomi Daniels filed a petition under chapter 13 of the Bankruptcy Code with this court. Debtors' schedules list Nissan as a secured creditor with a claim of $18,040.74 and a 1990 Nissan Sentra as collateral.[1]   Paragraph 2(b)

---

1. The sales contract lists the collateral as a Nissan Stanza.

of the debtors' plan proposed the following relevant to Nissan's claim.

> Secured creditors shall retain Liens securing their claims. Creditors who file claims shall be paid the lesser of (1) the amount of their claim or (2) the value of their collateral as set forth here: Nissan Motor Accept.—$11,000.00.

Unsecured creditors whose claims were filed and allowed were to be paid pro-rata from any funds remaining after payment of priority claims and secured claims. Debtors' plan proposed to pay to the trustee $290.00 a month for a period of 60 months.

On July 12, 1991 a service corporation employed by Nissan filed a proof of claim on behalf of Nissan listing the amount owed as $0.00. Attached to the proof of claim was a copy of the certificate of title listing Nissan as first lienholder and the motor vehicle sales contract and security agreement evidencing a principal amount financed of $15,202.00 and monthly payments of $353.74 beginning May 17, 1990.

After notice and a hearing, the plan as proposed by debtors was confirmed on September 24, 1991. Based on the filed and allowed proof of claim, the trustee made no payments to Nissan. After twelve months debtors had paid all allowed claims in full. The trustee's final report shows debtors paid a total amount of $3,190.00. Debtors were granted a discharge by order dated May 14, 1992 and their case was closed May 29, 1992. On September 13, 1993, approximately one year and four months after debtors' discharge Nissan filed the present motion to reopen this case. Debtors remain in possession of the automobile.

### Conclusions of Law

Nissan seeks to have this case reopened in order that (1) the full compliance discharge granted debtors can be vacated, (2) it can amend its proof of claim to reflect a secured claim in the amount of $11,000.00 and an unsecured claim in the amount of $7,654.17, and (3) the future earnings of the debtors can be distributed to it in accordance with the

terms of the confirmed plan. Nissan contends that its mistake in filing a $0.00 proof of claim in this case and debtors' failure to meet the statutory requirements for a full compliance discharge warrant the requested relief under § 350(b) of the Bankruptcy Code, Federal Rule of Civil Procedure ("FRCP") 60(b) made applicable to this case by Federal Rule of Bankruptcy Procedure ("FRBP") 9024, and FRBP 3008.

■■■■ The Bankruptcy Code allows a case to be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The burden of establishing cause is on the movant. *In re Frontier Enterprises, Inc.*, 70 B.R. 356, 359 (Bankr. C.D.Ill.1987). A decision to reopen a case for "cause" is within the sound discretion of the bankruptcy court. *Id.* Although "cause" is not defined in the Bankruptcy Code, a judge's decision should be based on a weighing of all equitable factors in the case. *In re Shondel*, 950 F.2d 1301, 1304 (7th Cir.1991).

In its briefs submitted to the court, Nissan argues that the equities demand a reopening of the case; otherwise the debtors will receive a windfall. This may or may not be true. However, reopening is of no purpose if a party cannot utilize the reopening to obtain the relief requested. The central issue for decision is whether my prior discharge order entered in this case can properly be vacated to allow Nissan to amend its proof of claim and be paid under debtors' confirmed plan. I find it cannot.

Under 11 U.S.C. § 1328(a), as soon as practicable after the debtor completes all payments under the plan, the debtor is given a discharge of all debts provided for by the plan or disallowed by § 502.[2] This discharge can only be revoked if it was obtained by the debtor through fraud. 11 U.S.C. § 1328(e). Nissan, however, does not contend that debtors' discharge was fraudulently obtained. Instead, it relies on *In re Cisneros*, 994 F.2d 1462 (9th Cir.1993), for the proposition that the discharge order can be vacated absent a showing of fraud.

---

**2.** Excepted from discharge, however, are § 1322 long term debts, criminal restitution debts, and certain debts made nondischargeable under 11 U.S.C. § 523. The claim at issue does not fall within any of those categories.

In *Cisneros,* the debtors' plan required a monthly payment of $3,888.00 to the Internal Revenue Service pursuant to a filed proof of claim. Payments were not made under the plan because the trustee never received ·notice from the clerk's office of the IRS' filed proof of claim. The court entered a discharge unaware of this unpaid claim. *Id.* at 1464. As in this case, the creditor in *Cisneros* did not contend that the discharge was obtained by fraud. However, the court permitted revocation on alternate grounds. Initially, the court held that as the debtors had never meet the statutory requirement for a full compliance discharge, completion of payments under the plan, they should not be entitled to any rights provided for in § 1328(e). *Id.* at 1465–66. Nissan makes the same contention here.

■ According to Nissan, debtors' *confirmed* plan specifically provided for payment of its claim as secured to the extent of $11,000.00 and the balance to be paid pro-rata. However, the debtors paid into the plan only $3,190.00 prior to receiving their full compliance discharge. Nissan contends, therefore, that remaining to be paid into the plan is a total of 48 monthly payments of $290.00 or $13,920.00.[3] Until this amount is paid, Nissan contends there has not been a "completion of payments under the plan" entitling the debtors to a full compliance discharge. I disagree.

Debtors' confirmed plan proposed to pay Nissan *the lesser of either* (1) any such filed and allowed claim *or* (2) its claim as secured to the extent of $11,000.00. In this case, Nissan filed a proof of claim for $0.00. Once a proof of claim is filed, it is deemed allowed unless a party objects. 11 U.S.C. § 502. Accordingly, by virtue of paragraph (2)(b), the plan *as confirmed* provided for Nissan's claim, $0.00, the lesser of Nissan's claim and debtors' proposed valuation.

■ Secured creditors are not required to file a claim in bankruptcy, but can look to their lien to satisfy the debt. *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886). *See also In re Thomas,* 883 F.2d 991, 996 (11th Cir.1989), *cert. denied, Thomas v. Southtrust Bank of Alabama,* 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990). By choosing to file a claim, a secured creditor forfeits that right and assents to treatment of his claim in the bankruptcy case. While a creditor may make a mistake in the claim it has filed, neither the debtor nor the trustee have a duty to correct the claim.

In this case, no payments were required to be made to Nissan under the plan, unlike the IRS claim in *Cisneros.* Debtors paid in full all claims asserted by creditors pursuant to filed proofs of claims. That the confirmed plan provided for monthly payments for 60 months does not require debtors to continue making payments after all claims provided for by the plan have been fully paid. *See In re Phelps,* 149 B.R. 534 (Bankr.N.D.Ill.1993) (payment of 10% dividend to unsecured creditors as called for by plan is "completion of payments under plan" despite payments made in 36 months rather than 43 months of proposed payments). Debtors satisfied the statutory condition for entry of a full compliance discharge as filed and allowed claims were paid in full.

■ Also relying on *Cisneros,* Nissan contends that the discharge order can be vacated pursuant to FRCP 60(b), made applicable in bankruptcy by FRBP 9024, on the grounds of mistake. FRCP 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party … from a final judgment, order, or proceeding for the following reasons: .(1) mistake, inadvertence, surprise, or excusable neglect….

In *Cisneros,* the debtors argued that § 1328(e) mandates that a full compliance discharge, once obtained, can only be taken away by a showing that it was procured by fraud; therefore, to the extent that a Federal Rule of Bankruptcy Procedure (9024) would conflict with this statute and allow for a revocation on other grounds, the statute must yield. 994 F.2d at 1462. The court

---

**3.** Nissan argues that even if the months in which the case has been closed are counted, there still remains, as of the date of the filing of its motion, thirty-one (31) months left for payments under the plan.

recognized that debtors were correct in stating that in cases where a bankruptcy rule conflicts with a statute, the statute must take precedence. *Id.* at 1465 (citing 28 U.S.C. § 2075 and *In re Cleveland,* 89 B.R. 69, 72 (9th Cir. BAP 1988)). However, the court concluded that no such conflict existed because

> the Debtors have suggested no reason to believe that Congress intended section 1328(e) to prevent the bankruptcy court *from correcting its own mistakes.* That this section specifies that a discharge may be revoked "only" for fraud may be explained, we think, as a means of emphasizing that other grounds for revocation—whether general equitable principles or some reason set forth in section 727(d), which governs revocation of a discharge granted in a Chapter 7 proceeding—are not to be imported into the Chapter 13 context.

*Id.* at 1466 (emphasis added).

This language in *Cisneros,* however, should not be read to mean that FRCP 60(b) can be freely used to vacate discharges. The *Cisneros* decision simply reaffirms that a court has the "inherent power to correct its own clerical errors." *In re Ford,* 159 B.R. 590, 593 (Bankr.D.Or.1993). As the court stated,

> The order of discharge was entered by the bankruptcy court under a misapprehension as to the facts of the case. Had the court been appraised of the actual facts, it would never have entered the order. In our view, this is precisely the sort of "mistake" or "inadvertence" that Rule 60(b) was intended to reach.

*Cisneros, supra,* at 1467.

█ In this case, however, the mistake which Nissan contends would permit revocation would be a mistake made by Nissan, not the court. There was no misapprehension about the facts. The trustee was aware of the $0.00 proof of claim. The only possible mistake was Nissan's failure to list the proper amount in its proof of claim. While Nissan contends that it will be prejudiced and debtors will receive a windfall if it is not granted relief, the court in *Cisneros* specifically noted that § 1328(e) barred the use of such "general equitable principles" as

grounds for revocation. Nissan's argument is simply an appeal to those equities.

To expand the limited ruling in *Cisneros* would effectively permit the contravention of the policies behind the Bankruptcy Code and § 1328(e) in particular. The primary objective of Congress in enacting the Bankruptcy Reform Act of 1978 was to give debtors "a fresh start, free from * * * the worries and pressures of too much debt." H.R.Rep. No. 595, 95th Cong., 1st Sess. 125 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6086. The financial rehabilitation of debtors is achieved through a discharge of debts. The entry of a discharge order gives finality to the bankruptcy process. By virtue of § 1328(e), the debtor can be assured that debtor's "fresh start" will not be jeopardized by revocation of the discharge unless the debtor acted fraudulently in obtaining it. To permit creditors to use FRCP 60(b) as suggested by Nissan would require bankruptcy courts to constantly revisit the propriety of a discharge whenever any sort of excuse, i.e., mistake, inadvertence, excusable neglect, or surprise, were asserted. Debtors could never be fully assured that their financial rehabilitation would not be compromised in the future. Such a ruling would destroy the finality that Congress clearly intended to promote in its enactment of § 1328(e). I find that FRCP 60(b) does not provide authorization for revoking an order of discharge on grounds of mistake as asserted in this case.

Nissan's reliance upon *Whitaker v. Associated Credit Service, Inc.,* 946 F.2d 1222 (6th Cir.1991) is misplaced. In *Whitaker,* a defendant alleged to have violated the Fair Credit Reporting Act made a typographical error in an offer of judgment for $500,000.00 instead of the intended $500.00. After plaintiffs accepted, the defendant immediately became aware of the mistake and moved to have the judgment set aside under FRCP 60. The court granted defendant's motion and the circuit court affirmed. *Id.* at 1223–24, 1226. Nissan contends that as its error is equivalent to the defendant's error in *Whitaker,* it supports use of FRCP 60 in this case. Nissan is mistaken. The court in *Whitaker* relied heavily in its decision on equitable factors such as the magnitude of the mistake

and lack of prejudice to plaintiffs in granting the requested relief. *Id.* at 1224–25. The *Cisneros* court stated that such equitable factors are not to be considered in a § 1328 revocation of discharge. 994 F.2d at 1466. The *Whitaker* court also found that no valid contract was established in that case due to a lack of a "meeting of the minds" on the contract terms. No such contractual issue is present here. Finally and most importantly, the *Whitaker* decision did not involve revocation of a discharge order and does not provide any guidance as to the operation of FRCP 60 in this context.

As Nissan is not entitled to have debtors' discharge revoked, no purpose can be served by reopening this case. I need not, therefore, reconsider allowance or disallowance of Nissan's claim pursuant to FRBP 3008. Nissan's motion to reopen is ORDERED denied.