In the Matter of OORC LEASING, LLC, Debtor.

No. 01–11207.

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Jan. 16, 2007.

Daniel J. Skekloff, Scot T. Skekloff, Skekloff, Adelsperger & Kleven, LLP, Fort Wayne, IN, for Debtor.

Timothy S. Harris—DLA, Piper Rudnick Gray Cary US, LLP, Chicago, IL, for G.E. Capital Corporation.

### DECISION ON MOTION TO REOPEN

ROBERT E. GRANT, Bankruptcy Judge.

The debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on April 3, 2001. A proposed plan was confirmed on October 3, 2003. In the months following confirmation, proceedings in the case involved objections to a number of claims and some contempt proceedings, all of which were concluded by May 2005. Nothing further took place for over a year, until July 20, 2006. On that date, the court, acting on its own initiative in accordance with the provisions of its local rules, deemed the estate to have been fully administered, issued a final decree, and closed the case. *See,* N.D. Ind. L.B.R. B–3022–1(a), (b).

A creditor of the debtor, G.E. Capital Corporation, has filed a motion to reopen. It contends that the debtor has defaulted in the performance of its obligations under the confirmed plan. GE Capital wants the case reopened so that it can seek conversion to chapter 7. *See,* 11 U.S.C. § 1112(b)(8).[1] Although motions to reopen are usually handled on an ex parte basis, *In re Canal Street Ltd. Partnership,* 269 B.R. 375, 380–81 (8th Cir. BAP 2001); *In re Menk,* 241 B.R. 896, 914 (9th Cir. BAP 1999); *In re Keenan,* 106 B.R. 239, 241(Bankr.D.Col.1989), the present request was so unusual that the court held a hearing on the issue and invited the parties to submit briefs. They have done so and the question was taken under advisement following the conclusion of that hearing.

Reopening cases once they have been closed is governed by § 350(b) of the United States Bankruptcy Code. This relatively short provision provides simply that "a case may be reopened ... to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). What constitutes cause for reopening a case is a matter committed to the court's discretion. *Matter of Shondel,* 950 F.2d 1301, 1304 (7th Cir.1991); *In re Apex Oil Co., Inc.,* 406 F.3d 538, 542 (8th Cir.2005); *Matter of Case,* 937 F.2d 1014 (5th Cir. 1991). Furthermore, just as what constitutes sufficient cause to reopen a case is not identified with any real specificity, the procedures the court should following in considering whether or not to do so are not specified either. This is one of the reasons the decision is usually made ex parte, based simply on the allegations contained in the motion itself, without notice or hearing.

The court can proceed ex parte because the act of reopening a case accords no independent relief and does not undo any of the statutory consequences of closing. *See, Menk,* 241 B.R. at 913–14. Instead, reopening is little more than a ministerial function which is designed to reactivate a case or bring it to the court's attention, so that the court can receive and act upon some other request. *In re Abbott,* 183 B.R. 198, 200 (9th Cir. BAP 1995); *In re David,* 106 B.R. 126, 128–29 (Bankr. E.D.Mich.1989). *See also, In re Bartlett,* 326 B.R. 436, 438 (Bankr.N.D.Ind.2005).

---

1. This case pre-dates the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Accordingly, all citations are to the pre-reform version of the Bankruptcy Code. The current equivalent of this provision would be 11 U.S.C. § 1112(b)(4)(N).

If the motion to reopen is granted that other request may then be filed and it will be considered in the manner provided by the Bankruptcy Code and the applicable rules of procedure. But the act of reopening says nothing about the merits of the forthcoming request the movant wants the bankruptcy court to entertain. *Abbott*, 183 B.R. at 200–01. *See also, In re Daniels,* 34 B.R. 782, 784 (9th Cir. BAP 1983). While the merits of that forthcoming request for relief are often disputed, those issues should not be litigated in connection with the decision to reopen. Instead, they should wait until the case has been reopened and the forthcoming request, whatever it may be, has been properly put before the court. *In re Staffer,* 306 F.3d 967, 972 (9th Cir.2002); *Abbott*, 183 B.R. at 201. Indeed, if the court would purport to decide that ultimate issue in connection with the decision to reopen, it is doubtful that such a pronouncement would be binding in any future litigation. *See, Menk,* 241 B.R. at 915. The merits of the forthcoming request are not properly a part of the issues presented by a motion to reopen and their disposition is not necessary to determine the question of reopening; so anything the court might say with regard to the parties' ultimate dispute should have no res judicata or collateral estoppel effect.

Litigants often forget that reopening a case has no independent significance and, in their rush to have the court decide the ultimate issue that will be presented if the case is reopened, try to debate the merits of that request in connection with reopening itself. In other words, they want the court to skip the intermediate step of deciding whether or not a case should be reopened and proceed straight to the final battle. As a result, instead of arguing about what might constitute an appropriate cause to reopen a case, parties end up arguing about who will emerge as the victor in the dispute that would be submitted

to the court if the case is reopened. Unfortunately, courts often indulge such litigants and, rather than deciding whether the case should be reopened in order to consider a particular request, end up deciding whether or not that request has merit. The decision to reopen is then made based upon the anticipated outcome of the matter that would have been submitted to the court if the case had been reopened.

While the court understands the natural tendency to decide issues litigants actually present to it, prematurely disposing of their future dispute unnecessarily complicates the issue of reopening and can create doubts about just what it was the court may have done. Was the court's decision limited to reopening the case, yes or no? If reopening is denied, can the ultimate dispute the movant may have wanted to present to the bankruptcy court be submitted elsewhere or did the court effectively decide to reopen the case and then immediately proceed to decide that ultimate dispute, without any intervening filings, notice, or other proceedings? In order to properly understand what should happen next—and where—things should be more clear. For example, does a decision denying a motion to reopen because of the court's perceptions concerning the merits of the parties' ultimate dispute mean that they are able to continue their battle elsewhere? If one of the parties is dissatisfied with the court's opinion as to the merits of their future litigation, are they obligated to appeal? And, if they do appeal, what is the appropriate standard of review? Is it the very broad abuse of discretion standard that applies to the discretionary act of reopening or is it the traditional standard of appellate review, in which the court's findings of fact are reviewed for clear error and its legal conclusions are reviewed de novo, or is it unreviewable

abstention? *See, Menk,* 241 B.R. at 915–17.

Where the ultimate relief sought involves something that only the bankruptcy court can do, the court's discretionary decision denying reopening may well be outcome determinative. For example, a common reason to reopen a case is so that a debtor can file a motion to avoid a judicial lien. Such a motion filed in a reopened case is subject to the affirmative defense of laches and may properly be denied where the lienholder demonstrates that it has somehow been prejudiced by the delay. *See e.g., In re Bianucci,* 4 F.3d 526, 529 (7th Cir.1993); *In re Vaske,* 339 B.R. 489, 491 (Bankr.N.D.Iowa 2006). When litigants try to accelerate the decisional process they conflate the issues, with the result that a creditor who gets word of a, usually ex parte, motion to reopen opposes that act based upon the argument that it has a valid defense to the forthcoming motion to avoid its lien. Because of misplaced perceptions of judicial economy—after all, the disputing parties are already before the court, if the motion to reopen is granted they are going to fight this fight anyway, so why not proceed to the main event?—courts end up deciding selected defenses to future relief rather than the narrower issue of whether sufficient cause has been shown to reopen the case. Such an approach has little to recommend it. Although the motivation may be one of judicial economy, there are few, if any, real savings in judicial time or involvement. The court ends up receiving much the same evidence and many of the same arguments that it otherwise would, but does so in the context of reopening rather than a request for the relief to which that evidence and those arguments actually pertain. A much cleaner record, particularly in the event someone would want to appeal, would result if the court simply granted the motion to reopen and then separately disposed of the relief that prompted the reopening, hearing and determining the defenses in connection with the motion to which they actually relate, rather than in connection with the preliminary motion to reopen. Moreover, by creating the impression that the act of reopening has significance or accords some kind of independent relief, instead of promoting judicial economy courts may actually be multiplying litigation by encouraging objections to, and even appeals from, reopening cases. *See e.g., Menk,* 241 B.R. 896 (dismissing appeal); *Abbott,* 183 B.R. 198 (same).

In addition to unnecessarily increasing litigation, the willingness to rush ahead and purport to decide the merits of the ultimate dispute confuses the law of reopening. By intermingling the issue of reopening with defenses to the relief that will be sought if the case is reopened, the true question presented by a motion to reopen—which is what types of actions which someone would like to take in the bankruptcy court constitute cause to reopen a case—is obscured. Once obscured, the concept of what constitutes cause to reopen a case under § 350(b) then becomes thoroughly muddled.

In this matter, the question before the court is whether it is appropriate to reopen a case so that someone can seek to convert it to another chapter. In particular, is it appropriate to reopen a chapter 11 case that has been closed following confirmation so that someone can file a motion to convert to chapter 7? The briefs the parties have filed do not speak to this issue. Instead of discussing what might constitute appropriate cause to reopen a case, counsel have engaged in a lively and interesting exchange concerning the post-confirmation scope of the court's subject matter jurisdiction in chapter 11 cases and the effect of converting such a case following confir-

mation. While these issues might be germane if the court were considering a motion to convert this case, they do not bear upon the question actually before it, which is whether the case should be reopened so that the court can entertain a motion to convert. In their rush to have the court decide the consequences of conversion, the parties have succumbed to the tendency of arguing about selected defenses to a potentially forthcoming motion in connection with the proceedings on reopening. The court will resist the parties' invitation and will not, in any way, opine concerning the scope of its postconfirmation jurisdiction in chapter 11 cases or what the effect of converting such a case to chapter 7 may be. Instead, the court will focus its attention on the precise issue before it, which is whether the desire to seek conversion to chapter 7 following confirmation constitutes sufficient cause to reopen a chapter 11 case. That issue, which is different from the issues the parties have briefed, is a matter committed to the court's discretion. *Apex Oil*, 406 F.3d at 541; *In re Staffer*, 306 F.3d 967, 971 (9th Cir.2002); *Shondel*, 950 F.2d at 1304; *In re Rosinski*, 759 F.2d 539, 540–41 (6th Cir.1985).

A review of the published decisions where the court has directly addressed the question of whether or not it should reopen a case reveals that reopening occurs in a variety of situations. Cases have been reopened for such diverse purposes as amending a debtor's schedules in order to include omitted creditors, *In re Bowen*, 102 B.R. 752 (9th Cir. BAP 1989); *In re Moyette*, 231 B.R. 494 (E.D.N.Y.1999), allowing a debtor to file a motion to avoid a judicial lien, *In re McDonald*, 161 B.R. 697 (D.Kan.1993); *In re Dodge*, 138 B.R. 602 (Bankr.E.D.Cal.1992); *In re Goydoscik*, 94 B.R. 72 (Bankr.W.D.Pa.1988); *In re Hall*, 22 B.R. 701 (Bankr.E.D.Pa.1982), to administer undisclosed assets for the benefit of creditors, *In re Graff*, 255 F. 241 (2nd

Cir.1918); *In re Lopez*, 283 B.R. 22 (9th Cir. BAP 2002); *In re DeLash*, 260 B.R. 4 (Bankr.E.D.Cal.2000); *In re Daniel*, 205 B.R. 346 (Bankr.N.D.Ga.1997); *In re Shelton*, 201 B.R. 147 (Bankr.E.D.Va.1996); In re *Winebrenner*, 170 B.R. 878 (Bankr. E.D.Va.1994); *In re Mitchell*, 47 B.R. 209 (Bankr.N.D.Tex.1985), to obtain a determination concerning dischargeability, *In re Daniels*, 34 B.R. 782 (9th Cir. BAP 1983); *In re Phillips*, 288 B.R. 585 (Bankr. M.D.Ga.2002); *In re Strano*, 248 B.R. 493 (Bankr.D.N.J.2000); *In re Higgins*, 161 B.R. 993 (Bankr.W.D.Mo.1993); *In re Wright*, 7 B.R. 197 (Bankr.N.D.Ala.1980), to enforce the discharge injunction, *In re Hicks*, 184 B.R. 954 (Bankr.C.D.Cal.1995), to obtain relief from the discharge injunction or modify its scope, *Matter of Shondel*, 950 F.2d 1301 (7th Cir.1991), to remedy violations of the automatic stay, *In re Weber*, 283 B.R. 630 (Bankr.D.Mass.2002), to recover improper distributions, *In re R & W Enterprises*, 181 B.R. 624 (Bankr. N.D.Fla.1994); *In re Frontier Enterprises, Inc.*, 70 B.R. 356 (Bankr.C.D.Ill.1987), to interpret or clarify the terms of a confirmed plan, *Matter of Case*, 937 F.2d 1014 (5th Cir.1991); *In re Doty*, 129 B.R. 571 (Bankr.N.D.Ind.1991), and to enforce the orders of the court, *In re Searles*, 70 B.R. 266 (D.R.I.1987). Based upon the discussion of the issue in Colliers, the most common reasons to reopen are to administer assets, amend schedules, and avoid liens, in addition to addressing issues involving a debtor's discharge. *See*, 3 Collier on Bankruptcy ¶ 350.03 (15th ed. rev. 2006).

Despite their apparent diversity, all of these different situations present some common themes. Courts reopen cases in order to:

a. take care of something that should have been done, but was not, while

the case was open—administer assets, avoid liens, amend schedules;

b. determine the impact of the bankruptcy proceedings—dischargeability litigation, discharge and discharge injunction issues, and plan interpretation questions; or,

c. correct some type of error that occurred while the case was open—recovery of improper distributions and remedying violations of the automatic stay.

It thus seems that courts are reopening cases for some type of clean-up or corrective purpose, addressing a detail that ideally should have been taken care of while the case was open, or to determine the consequences of the bankruptcy. *See, Matter of Zurn,* 290 F.3d 861, 864 (7th Cir.2002). Courts are not reopening cases, and based upon the reported decisions they are rarely being asked to do so, in order to make a fundamental change in the entire bankruptcy proceeding.

■ Converting a case from one chapter to another, particularly from chapter 11 to chapter 7, is not designed to tend to an unfinished detail or to take care of something which was previously left undone, or to determine the consequences of the debtor's bankruptcy. Instead, if it has all of the effects the creditor desires, such as reconstituting the bankruptcy estate, conversion would represent a seismic change in the nature of these proceedings.[2] The focus would be changed from the confirmation and performance of a proposed plan to a liquidation of the debtor's assets. Not only would the focus of the proceedings change but the identity of the parties who could participate in it would also change. Under the case as originally filed, the only creditors are those that existed as of the date of the petition—April 3, 2001. *See,* 11 U.S.C. § 101(10)(A). If the case is converted, the universe of creditors will be expanded to include all those who are owed money as of the date of the conversion. *See,* 11 U.S.C. § 348(d). Except for the disputed issue of whether there would be any property in the post-conversion bankruptcy estate, conversion would be little different from commencing an entirely new case at the present time. That is decidedly different from, and more dramatic than, the relatively simple and focused reopen-to-tend-to-a-particular-detail type of reopening request the courts generally receive. Indeed, the court's research has located only two cases which have addressed the issue of reopening in connection with the desire to convert to another chapter. In each instance the court determined that it is not appropriate to do so. *See, Canal Street Ltd. Partnership,* 260 B.R. 460 (Bankr.D.Minn.2001)(denying creditor's motion to reopen to seek conversion from chapter 11 to chapter 7) aff'd *Canal Street,* 269 B.R. 375; *In re Terrell,* 1997 WL 52902 (Bankr.D.Dist.Col.1997)(debtor could not reopen to convert from chapter 7 to chapter 13).

The court's perception that it is not appropriate to reopen a chapter 11 case in order to seek conversion to chapter 7 is in full accord with the effect of confirmation upon the operations of the debtor. As observed by the 7th Circuit:

Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm is also without the *protection* of the bankruptcy court. It may not come running

---

2. If it has the effects the debtor envisions, conversion would be a meaningless act, accomplishing nothing.

to the bankruptcy judge every time something unpleasant happens.... Formerly a ward of the court, the debtor is now emancipated by the plan of reorganization. A firm that has emerged from bankruptcy is just like any other defendant in a tort case: it must protect its interests in the way provided by the applicable non-bankruptcy law.... *Pettibone v. Easley,* 935 F.2d 120, 122 (7th Cir.1991) (citations omitted, emphasis original).

"The corollary of this is that [the debtor] and its creditors should work out their mutual rights and duties in the ordinary tribunals and should not forever continue under the tutelage of the bankruptcy court." *Butler v. Greater Pythian Temple Assoc. of New York,* 205 F.2d 621, 623 (2nd Cir.1953). Thus, just as the post-confirmation chapter 11 debtor should not continue to look to the bankruptcy court for solutions to its woes, neither should the debtor's creditors. Both of them should look to other courts to vindicate their rights, whatever they may be.

Other courts are available to vindicate GE Capital's rights under the confirmed plan, and that is a legitimate consideration in deciding whether or not to reopen a case. *See, Apex Oil,* 406 F.3d at 542; *In re Otto,* 311 B.R. 43 (Bankr.E.D.Pa.2004). No one disputes that GE Capital has the right to enforce the debtor's plan in a non-bankruptcy court of appropriate jurisdiction, be it state or federal. The creditor acknowledges that doing so is an option but it believes that the bankruptcy court would be a more convenient forum. Whether or not that is true, that perceived convenience is not a sufficient reason to reopen this case. Instead, if the bankruptcy court truly is the most appropriate forum for addressing the rights of the parties, the creditor should initiate an involuntary proceeding, *see,* 11 U.S.C. § 303, and

start a new case, rather than reopening an old one.

The court holds that it is not appropriate to reopen a closed case in order to seek its conversion to a proceeding under a different chapter of the Bankruptcy Code. G.E. Capital Corporation's motion to reopen will therefore be DENIED. An order doing so will be entered.