**In the Matter of David Allen JOHNSON, Debtor.**

No. 07–10937.

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

March 4, 2009.

Daniel J. Skekloff, Scot T. Skekloff, Sarah Mustard Heil, Skekloff, Adelsperger & Kleven, LLP, Fort Wayne, IN, for Debtors.

Ellen L. Triebold, Office of the U.S. Trustee, South Bend, IN, for U.S. Trustee.

### *DECISION*

ROBERT E. GRANT, Bankruptcy Judge.

The bankruptcy reforms of 2005 changed many things. Some of those changes make an individual debtor's Chapter 11 case look a lot more like Chapter 13. Property of the estate is not limited to the debtor's interests in property as of the date of the petition. 11 U.S.C. § 541. It now includes property the debtor acquires after the commencement of the case and the debtor's post-petition earnings. *Compare,* 11 U.S.C. § 1115 *with* 11 U.S.C. § 1306. To the extent necessary, the debtor's post-petition earnings and future income must be used to fund a plan. *Compare,* 11 U.S.C. § 1123(a)(8) *with* 11 U.S.C. § 1322(a)(1). An individual debtor's plan

does not need to satisfy the absolute priority rule, 11 U.S.C. 1129(b)(2)(B), and, even though unsecured creditors will not be paid in full, can be confirmed over their objection so long as the plan satisfies the disposable income test of § 1325(b)(2). 11 U.S.C. § 1129(a)(15). Substantial consummation is no longer a bar to the modification of a confirmed plan. 11 U.S.C. § 1127(b). Instead, an individual debtor's plan can be modified any time prior to the completion of payments and modification may be sought, not just by the plan proponent and the reorganized debtor, *id.*, but by the debtor, the trustee, the United States Trustee, or an unsecured creditor. *Compare,* 11 U.S.C. § 1127(e) *with* 11 U.S.C. § 1329(a). Finally, unless the court orders otherwise, the individual debtor does not receive a discharge upon confirmation but must wait until all payments under the plan have been completed. *Compare,* 11 U.S.C. § 1141(d)(5) *with* 11 U.S.C. § 1328(a). These similarities have led one commentator to suggest that "individual Chapter 11 cases can now be characterized as 'big Chapter 13' cases...." Robert J. Landry, III, *Individual Chapter 11 Reorganizations: Big Problems with the New "Big" Chapter 13,* 29 U. ARK. LITTLE ROCK L.REV. 251, 252 (2006-07).

Despite the similarities, some things were not changed and potentially significant differences remain. For example, unlike Chapter 13, in the Chapter 11 case there is no automatically appointed trustee to oversee the debtor's plan or to receive and distribute payments to creditors, *see,* 11 U.S.C §§ 1302(a), 1326. The duration of the Chapter 11 debtor's plan is not limited to a maximum period of five years. 11 U.S.C. §§ 1322(d), 1329(c). Perhaps because of the lack of any time limit, there is nothing in Chapter 11 that is similar to the provisions of Chapter 13 which permit payments to be made to some creditors after the date of the final plan payment or an exception to the debtor's discharge to accommodate such ongoing payments. *See,* 11 U.S.C. §§ 1322(b)(5), 1328, 1141(d)(5). Other provisions of the law which were not changed and which remain the same for all Chapter 11 debtors include the definition of substantial consummation, 11 U.S.C. § 1101(2), the time when the case may be closed, 11 U.S.C. § 350(a), and the obligation to pay quarterly fees to the United States Trustee so long as the case remains open. 28 U.S.C. § 1930(a)(6).

In this Chapter 11 case, the court must consider some of the changes introduced by the 2005 reforms and some of what remained the same. The particular question before it involves closing an individual debtor's Chapter 11 case, subject to reopening, before the debtor has completed the payments called for by the confirmed plan and before the debtor has received a discharge. Doing so is apparently routine in the Eastern District of North Carolina, *see, In re Sheridan,* 391 B.R. 287, 290 n. 2 (Bankr.E.D.N.C.2008), but here in the Northern District of Indiana the possibility has drawn strenuous objections from the U.S. Trustee.

The debtor is a physician. Under the terms of the confirmed plan, his creditors are to be paid out of future income over a period of five years. Precisely how much unsecured creditors will be paid is not known.[1] The payments to them are based upon a formula that begins with the debtor's post confirmation income and then subtracts various expenses, the plan payments to secured and priority creditors, and any expenses of administration, such as the U.S. Trustee's ongoing quarterly fees. In his amended disclosure statement the debtor projected that, over the five

---

1. The disclosure statement indicates that unsecured creditors would receive nothing in

a liquidation under Chapter 7. Amended Disclosure Statement, filed Sept. 19, 2007, p 7.

year life of the plan, approximately $70,030, exclusive of bonuses, would be available to pay creditors and the expenses of administration. Payments to secured and priority creditors were projected to total $18,778.81, leaving an anticipated $51,251.19 to pay unsecured creditors and the U.S. Trustee.[2] *See*, Amended Disclosure Statement, filed Sept. 19, 2007, pgs. 7–9.

The debtor's proposed plan, as modified, was confirmed and, since confirmation, has been substantially consummated. *See*, 11 U.S.C. § 1101(2) (defining "substantial consummation"). Furthermore, any issues concerning claims have been resolved, so the only thing that remains to be done is for the debtor to successfully perform his plan and receive a discharge. The debtor has filed a motion asking the court to close the case now, subject to being reopened after the plan payments have been completed so that a discharge might be entered. *See*, 11 U.S.C. 350(b) ("A case may be reopened . . . to administer assets, to accord relief to the debtor, or for other cause."). The reason for doing so is to minimize the debtor's expenses by eliminating the ongoing quarterly fees that must be paid to the U.S. Trustee and, since those expenses are among those which are subtracted from the debtor's income to calculate the payments due creditors, make a corresponding increase in the distribution to creditors. The only objection to the motion, following notice to all creditors, came from the U.S. Trustee and the matter is before the court, following a hearing and the submission of briefs, to consider the issues raised by the debtor's motion to close and the U.S. Trustee's objections thereto.

To a great extent the foundation of the parties' respective arguments rests on either what was changed by the 2005 reforms or what was not. The debtor focuses largely upon what has apparently remained the same and things which were not changed by that legislation: the long-standing policy of closing Chapter 11 cases soon after confirmation, the language of § 350(a) concerning when cases are to be closed, 11 U.S.C. § 350(a), and Bankruptcy Rule 3022 which helps to implement that statute in Chapter 11 cases. The U.S. Trustee, on the other hand, focuses largely upon what was changed in 2005. The essence of its argument is that Congress sought to make an individual debtor's Chapter 11 case more like Chapter 13 and so, like Chapter 13, the case should remain open until all the plan payments have been completed and the debtor receives a discharge. It also argues that avoiding the U.S. Trustee's quarterly fees is not a sufficient reason to close the case prior to the debtor completing the plan payments, and that doing so will make it more difficult for creditors to monitor the debtor's activities and to take advantage of their opportunity to seek post confirmation modification of the plan, 11 U.S.C. § 1127(e), or, should the debtor fail to perform the plan, conversion or dismissal. 11 U.S.C. § 1112(b)(4)(N).

There is truth in what both sides have to say. The courts do have a long-standing

---

2. As originally proposed, the plan called for a disbursing agent, who was to be compensated, to collect and distribute the debtor's payments. This proposal drew an objection from Tower Bank, one of the unsecured creditors, which, among other things, questioned both the need for and the cost of a disbursing agent. *See*, Objection to Plan, filed on Dec. 26, 2007. The objection was resolved through an agreed modification to the plan which eliminated the disbursing agent and has the debtor make payments directly to creditors. *See*, Agreed Modification to Plan, filed Jan. 15, 2008. Accordingly, under the plan as confirmed, *see*, Order Confirming Plan, dated Jan. 18, 2008, it appears that the only ongoing expenses of administration are the U.S. Trustee's quarterly fees.

policy of closing Chapter 11 cases soon after confirmation, particularly where the debtor is reorganized rather than liquidated, generally around the time when the only thing that remains to be done is for the reorganized debtor to make the payments called for by the plan. *See e.g., In re Jay Bee Enterprises, Inc.,* 207 B.R. 536 (Bankr.E.D.Ky.1997); *In re Indian Creek Ltd. Partnership,* 205 B.R. 609 (Bankr. D.Ariz.1997); *In re Jordan Mfg. Co., Inc.,* 138 B.R. 30 (Bankr.C.D.Ill.1992); *In re Mold Makers, Inc.,* 124 B.R. 766 (Bankr. N.D.Ill.1990). At the same time, however, where the debtor is an individual Congress did insert many elements of Chapter 13 into Chapter 11. In light of these changes, particularly the delayed discharge and the open-ended opportunity for modifying a confirmed plan, the court is not prepared to say that the pre-BAPCPA policy of closing Chapter 11 cases soon after confirmation remains completely intact for individual debtors. Nonetheless, the similarities in the two chapters do not make them identical and there continue to be important differences between them: differences which counsel against adopting the U.S. Trustee's position that cases should remain open until the plan payments have been completed.

■ The primary weakness in the U.S. Trustee's position is the potentially unlimited duration of an individual debtor's Chapter 11 plan. Although this debtor's plan will only last for five years, and some plans may be completed in a matter of months, *see, In re Ball,* 2008 WL 2223865 (Bankr.W.D.W.Va.2008), it is easy to imagine a Chapter 11 plan that could last for decades. All it would take for that to happen is for a debtor to have a 20 to 30 year home mortgage (something that is not at all unusual) and for the confirmed plan to provide that the mortgage debt will be paid according to its terms. While the provisions of Chapter 13 easily accommodate such long term obligations, *see,* 11 U.S.C. §§ 1322(b)(5), 1329(c), the provisions of Chapter 11 do not. In Chapter 11 the payments under such a plan would not be completed, and the debtor would not be entitled to a discharge, until the mortgage debt was fully satisfied—20 to 30 years hence. The court finds it difficult to believe that Congress would prohibit Chapter 11 debtors from modifying claims secured by their homes, 11 U.S.C. § 1123(b)(5), and, by doing so, effectively require their cases to remain open for the entire term of the mortgage. Such a proposition may sound a bit ridiculous, but it does illustrate why a bright-line, no-closing-until-payments-are-complete, rule, although appealing and easy to apply, is not practical and why there must, instead, be some mechanism which will allow these cases to be closed before payments are complete.[3]

■ The court need look no further than the statute, 11 U.S.C. § 350(a), and

---

**3.** At one time the court thought that the possibility a debtor can receive a discharge prior to completing all the plan payments, *see,* 11 U.S.C. § 1141(a)(5), might eliminate the problem. *See, In re Brown,* 2008 WL 4817505 (Bankr.D.C.2008). It even held an additional hearing and invited additional briefs to consider the idea. Unfortunately, it does not offer an effective solution. Aside from the fact that the courts have not yet determined when it would be appropriate to discharge the debtor prior to completing the plan payments and this is not the time to embark upon that analysis, even if a debtor receives an early discharge, the language of the statute still allows a plan to be modified—or at least offers the opportunity to seek modification— any time before payments are completed. 11 U.S.C. § 1127(e). So the entry of an early discharge will not really bring finality to the case or to the debtor/creditor relationship. The possibility of significantly changing that relationship, through a post-confirmation modification, will last until the plan has been fully performed.

the current rules of procedure, Fed. R. Bankr.P. Rule 3022, for guidance. Section 350(a), which applies to cases under all chapters of the Bankruptcy Code, provides that "the court shall close the case" "after an estate is fully administered and the court has discharged the trustee." Here there is no trustee to discharge, so the only question is whether the estate can be considered "fully administered." While Rule 3022 says little more than that, *see,* Fed. R. Bankr.P. Rule 3022 ("After an estate is fully administered in a chapter 11 reorganization case, the court ... shall enter a final decree closing the case."), its associated commentary offers a helpful list of considerations.

> Entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed. Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved. Fed. R. Bankr.P. Rule 3022, Advisory Committee Note (1991).

The nature of these considerations calls for a flexible, case-by-case evaluation of a number of procedural and practical factors. *In re Union Home & Industrial, Inc.,* 375 B.R. 912, 917 (10th Cir. BAP 2007). In this case, they persuade the court that the estate should be considered fully administered.

Although the debtor has not completed the plan payments, that does not prevent a case from being fully administered. Neither should the fact that the debtor has not received, and is not yet eligible to receive, a discharge. Section 350(a) focuses on the condition of the estate, not the presence or absence of a discharge. Corporations never receive a discharge under Chapter 7, 11 U.S.C. § 727(a)(1), and there are many cases where an individual debtor is not eligible to receive a discharge because it failed to complete the required post-petition financial management education which is a prerequisite for their discharge. *See,* 11 U.S.C. § 727(a)(11). If discharging the debtor were a requirement for closing, these cases would have to remain open; yet all of them are easily closed without a second thought. The order confirming this debtor's plan has become final, there was no deposit to distribute, any property the plan contemplates transferring has been transferred or otherwise disposed of, the reorganized debtor has begun to manage his affairs, payments to creditors have commenced, the plan has been substantially consummated, and all outstanding motions, adversary proceedings, and contested matters (save this one) have been resolved. All that remains to be done is for the debtor to perform his plan and receive a discharge, or for the debtor to fail and someone then seek conversion or dismissal of the case. Admittedly, doing so will necessitate reopening the case so that the court can conduct appropriate proceedings, but the fact that the court's jurisdiction might be invoked in the future is not a reason to keep the case open. Fed. R. Bankr.P. 3022, Advisory Committee Note (1991) ("The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future.").

The U.S. Trustee argues, however, that paying quarterly fees is an integral part of

what Congress expects a Chapter 11 debtor to do, much like the Chapter 13 trustee's fee for administering the plan, and, relying on *In re Ball,* 2008 WL 2223865 (Bankr.N.D.W.Va.2008), contends that avoiding payment of those fees is not a sufficient reason to close the case before a plan has been completed. The court would note, however, that the confirmed plan in *Ball* was much different than the plan confirmed in this case. That plan contemplated paying creditors out of the proceeds generated by liquidating assets and was expected to be completed in the near future. *Id.,* at *4. Here the plan is to last for five years and creditors are to be paid out of debtor's future income. Indeed, *Ball* chose to leave for another day the precise question facing this court. *Id.* ("The court leaves for another day the issue of whether such an accommodation [ending payment of quarterly fees] would be appropriate in an individual Chapter 11 case of more significant duration, such as a five-year plan required under § 1129(a)(15).").

There is another, and potentially more important, feature distinguishing this case from *Ball.* The question here is not so much whether the debtor will be able to avoid paying U.S. Trustee fees, as in *Ball,* but rather to whom the amount of those fees will be paid, creditors or the U.S. Trustee. In *Ball* the debtor's payments to creditors were fixed. They were memorialized by a promissory note, *id.* at *1, and would not be affected by any fees paid to the U.S. Trustee while the case remained open. Under those circumstances, it is quite easy to characterize the quarterly fees as "the cost of doing business under Chapter 11." *Id.* at *4. Here, however, the debtor's payments to creditors are not fixed. They are determined by his income minus certain expenses; so any reduction in expenses, such as eliminating the U.S. Trustee's fee, will result in a corresponding increase in the payment to creditors. Furthermore, the fees in question are not insubstantial. As of the date of the hearing, it was estimated that the quarterly fees which would be paid to the U.S. Trustee if the case remained open for the entire five year life of debtor's plan would total $13,000. So, in one sense the question becomes one of closing the case early so that creditors can be paid more or leaving it open and paying the U.S. Trustee. As between paying the money to creditors or paying it to the U.S. Trustee, the court believes the balance favors debtor's creditors.

In reaching this conclusion, the court is not unmindful of the U.S. Trustee's argument that closing the case now will make it more difficult for creditors to monitor the debtor's activities and, should the debtor default, more cumbersome for them to seek conversion or dismissal as a result, because of the necessity of having to reopen the case. To an extent all this is true. The court can apparently mitigate that burden somewhat by allowing creditors to reopen the case without paying the fee that might otherwise be required.[4] *See, Sheridan,* 391 B.R. at 290 n. 2 (confirmation orders provide for automatic reopening of cases without payment of a

---

4. Aside from the fee, the U.S. Trustee overestimates the burden associated with filing a motion to reopen. Reopening a closed case is largely a ministerial function which allows the court to receive and act upon some other request. *In re OORC Leasing, LLC,* 359 B.R. 227, 228 (Bankr.N.D.Ind.2007). While a case should not be reopened when no purpose would be served by doing so, *see e.g., In re* *Anderson,* 72 B.R. 495, 497 (Bankr.D.Minn. 1987), and the court would not do so to consider converting a corporate Chapter 11, *OORC Leasing,* 359 B.R. 227, given the 2005 reforms, it would certainly be appropriate to reopen an individual debtor's Chapter 11 case to consider issuing a discharge, modifying the plan, conversion or dismissal. *See,* 11 U.S.C. § 350(b).

fee.). More importantly, the court feels that creditors are entitled to choose for themselves whether the advantages that will come from leaving the case open are worth the $13,000 cost of doing so or if they would prefer to forgo those advantages in return for an enhanced distribution. Given the lack of any objection from creditors, following notice to all concerned, it seems they have chosen and would prefer to have the money. They made a similar choice before, in connection with confirmation and the plan's proposal for a disbursing agent who would collect and distribute the debtor's payments to creditors. That was the only aspect of the proposed plan any of them found objectionable and, rather than bear the cost of a disbursing agent, they were content to do without it, in return for an increased distribution. *See*, supra, pg. 854, footnote 2. Furthermore, nothing about this case suggests that there is any need for the increased oversight that would be facilitated by leaving the case open or that the debtor cannot be trusted to properly perform his post confirmation obligations. Prior to confirmation, no complaint was ever raised, either by the U.S. Trustee or any creditor, about the debtor's compliance with his obligations as a debtor-in-possession, and since confirmation there have been no complaints about the debtor's performance of his post-petition obligations, whether they involve payments to creditors or reporting his income and expenses to them when those payments are made. All of this suggests that the costs of leaving this case open will outweigh the benefits of doing so and that creditors will be better off it is closed now.

The debtor's motion to close will be granted. An appropriate order will be entered.