**In re KLIEGL BROS. UNIVERSAL ELECTRIC STAGE LIGHTING CO., INC., Debtor.**

**Bankruptcy No. 191–13001–352.**

United States Bankruptcy Court, E.D. New York.

Nov. 6, 1992.

Donovan Leisure Newton & Irvine, New York City, for debtor.

Marc Stuart Goldberg, New York City, Operating Trustee.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge:

The Trustee is attempting to confirm a plan of reorganization over objection by the Debtor and the impaired class of general unsecured creditors. To confirm under Section 1129(b) of the Code, the proponent of the plan must convince at least one impaired class of creditors to vote in favor of the plan's acceptance. Of the eight classes established by the plan, two which are classified as impaired, have voted in favor of the plan. The operating trustee, the proponent of the plan, thus claims that the court may confirm the plan by cramdown. Both the U.S. Trustee and the Debtor object, contending that neither of the two classes were properly constituted, thus, no impaired class entitled to vote has voted in favor of the plan.

The two consenting classes upon whose consent the Trustee relies are: 1) a post-petition secured lender, who under the plan will subordinate a part of its claim to the claims of the unsecured creditors, and 2) a trade union whose general claim for the non-priority portion of unpaid pre-petition wages has been classified separate and apart from all other general unsecured claims. The plan proposes to pay the union's general unsecured claim at seventy-five percent and other general unsecured claims at fifteen percent. Unsecured creditors have voted against the plan in sufficient numbers that even if the unsecured claims of the union were included in the same class as the general unsecured creditors, that class would still reject the Trustee's plan.

The issues are: 1) is the post-petition secured lender entitled to vote to accept the plan, and 2) can the general unsecured portion of the union's claim be separately classified so as to enable it to constitute a consenting class.

## THE RIGHT OF THE POST–PETITION SECURED CREDITOR TO VOTE ON THE PLAN

Assuming, *arguendo*, that the post-petition secured creditor has an impaired claim within the meaning of section 1124 of the Code, it still does not have the right to cast a vote. According to section 1126(a) of the Code, only "The holder of a claim or interest allowed under section 502 ... may accept or reject a plan." Since nowhere under section 502 is a post-petition secured lender mentioned or implied, the class containing this lender as its sole member is not as a matter of law entitled to vote on the plan. Whether the class containing the secured creditor constituted an impaired class is an issue we therefore need not reach. Moreover, this alleged impaired claim arose post-petition, and the opinions of several courts make it clear that "... 11 U.S.C. § 1124 applies only to pre-petition claims or interests and not to post-petition claims." *In re Tavern Motor Inn, Inc.*, 56 B.R. 449, 452 (Bankr.D.Vermont 1985). *See also, In re Blackwelder Furniture Co. of Statesville*, 31 B.R. 878, 881 (Bankr. W.D.N.C.1983).

## THE RIGHT TO PLACE THE UNSECURED PORTION OF THE UNION CLAIM INTO A CLASS SEPARATE FROM THE CLASS CONTAINING THE OTHER UNSECURED CREDITORS

There is a split of opinion as to whether similar claims simply *may* be classified to-

gether or whether they *must* be so classified. Judge Prudence Abram made perhaps the strongest and most quoted statement supporting the proposition that all like claims must be classified together when she wrote: "Although section 1122(a) deals with the placing of dissimilar claims in the same class, it by necessary implication deals with the placing of similar claims in different classes. There is no authority for classifying similar claims differently other than section 1122(b) just discussed.... Classification cannot be used to divide like claims into multiple classes in order to create a consenting class so as to permit confirmation." *In re Mastercraft Record Plating, Inc.,* 32 B.R. 106, 108 (Bankr.S.D.N.Y.1983). *See also, In re Waterways Barge Partnership,* 104 B.R. 776, 783 (Bankr.N.D.Miss.1989). However, many of the cases that follow the reasoning of Judge Abram do so solely in the limited circumstance where: "... it is patently obvious that the *only* reason that the Debtor has separately classified the unsecured claims in ... [separate classes] is to create a favorable class that will vote to accept the plan to meet the test of section 1129(a)(10)." *Id.* at 785. (emphasis added). At least one case in this line is even more extreme. It takes the position that: "... general unsecured claims not separable under section 1122(b) must be placed in the same class." *In re S & W Enterprise,* 37 B.R. 153, 163 (Bankr.N.D.Ill.1984). This position is clearly the exception, because it completely abandons any necessity of finding an intent to create a consenting class before collapsing multiple classes.

■ On the other hand, a line of cases best exemplified by the decision of Judge Conrad in *In re AG Consultants Grain Division, Inc.,* 77 B.R. 665 (Bankr. N.D.Indiana 1987) supports a much more flexible approach in classifying claims. In essence, Judge Conrad holds that it is appropriate to classify unsecured creditors separately if the differences in classification are in the best interest of the creditors, foster reorganization efforts, do not violate the absolute priority rule, and do not needlessly increase the number of classes. *Id.* at 674. Thus, if it is reason-

able to classify like claims separately, it may be done. This approach also has its adherents, *see Atlanta West VI,* 91 B.R. 620 (Bankr.N.D.Georgia 1988); *In re Aztec Co.,* 107 B.R. 585 (Bankr.M.D.Tenn.1989); *Greystone III Joint Venture,* 22 B.C.D. 452 (5th Cir.1991); *In re Jersey City Medical Center,* 817 F.2d 1055 (3rd Cir.1987).

Judge Conrad did not address the mandate in section 1129(b)(1) requiring that in a cram-down a plan not discriminate unfairly with respect to each class of claims. The charge of unfair discrimination often arises with respect to the formation of classes of unsecured creditors in order to achieve a cram-down. *In re Aztec Co.,* 107 B.R. 585 at 590. In this context, the unfairness frequently alleged is that of placing like claims in different classes where one class is treated better than another.

■ A number of courts have adopted the following four-part test to determine if unfair discrimination has occurred in the formation of the classes in the plan:

1. Whether there is a reasonable basis for the difference in treatment which would preclude a finding of an unfair discrimination,

2. Whether the Debtor can consummate the plan without the challenged discrimination,

3. Whether the discrimination is proposed in good faith, and

4. The nature of the treatment of the "discriminated" class, or as sometimes stated, whether the degree of discrimination is in direct proportion to its rationale. *In re 11,111, Inc.,* 117 B.R. 471, 478 (Bankr. D.Min.1990). This test has been used in a number of cases; the most important for present purposes is *In re Richard Buick, Inc.,* 126 B.R. 840, 852 (Bankr.E.D.Pa.1991) (reasonable basis for degree of discrimination in treatment of claimants contemplated by plan).

As between these two approaches, this court chooses to follow the more flexible one espoused by Judge Conrad, as long as the result is not inherently unfair.

In the present case, the unsecured portion of the claim of the members of the International Brotherhood of Electrical Workers (hereinafter "IBEW") is classified separately from other unsecured creditors with claims of a similar kind. The IBEW has refused to accept the plan unless they receive at least seventy-five percent of their unsecured claim. In addition, there is the suggestion that absent an eighty percent settlement, the IBEW might strike, although there has been no testimony to support such a finding. Sufficient funds were not available to pay all unsecured creditors at this level, so the trustee's plan placed the rest of the unsecured creditors into a separate class which will receive a smaller percentage distribution. On its surface, this appears to be discriminatory treatment.

In light of the four-part test outlined above, while placing the IBEW into a separate class may be discriminatory, it is not unfairly discriminatory so long as there exists a reasonable basis for the difference in treatment. We believe that such reasonable basis exists because the Debtor's ability to continue to operate a union shop is absolutely critical to its ability to function successfully in its industry. Within the Metropolitan New York Area and most other major markets, virtually all on-site electrical work, including the installation of Kliegl products, is performed by the IBEW. The IBEW will not install or service non-union manufactured products. Consequently, were it not a union shop, Kliegl would be disqualified from bidding on, much less fulfilling, many of the contracts upon which its business depends. Maintaining the Debtor's union shop, and thereby insuring its continued ability to compete for and get access to work in its industry, is clearly a reasonable basis for creating a separate class for the IBEW. The court in *Richard Buick*, for similar reasons, did not find a classification allowing full payment to automobile dealers alone unfairly discriminatory, where not doing so would have created an insurmountable public relations obstacle to the Debtor's re-entry into a highly-competitive market. Since the Debtor could not survive without the IBEW, the discrimination between the classes of unsecured creditors appears reasonably proportional to the consequences of failing to receive IBEW support. In fact, case law supports classifying the claims of a union separately from other unsecured creditors. *In re U.S. Truck Co., Inc.*, 47 B.R. 932 (E.D.Mich.1985).

It is well-accepted that: "An alteration which is clearly intended only to create an impaired class to vote in favor of a plan so that a debtor can effectuate a cram-down ... will not be allowed." *In re Club Associates*, 107 B.R. 385, 401 (Bankr. N.D.Ga.1989). However, where sufficient justification exists for separately classifying a creditor, such separate classification will not be nullified merely because such separate class may constitute the only consenting impaired class enabling successful confirmation by "cram-down".

As enunciated by the Eighth Circuit: "A debtor may classify substantially similar claims separately for [reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims.] *In re Greystone III Joint Venture*, 948 F.2d 134, 139 (5th Cir.1991) (as amended), *cert. den.*, — U.S. —, 113 S.Ct. 72, 121 L.Ed.2d 37; *see also Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1313 (8th Cir.1987)." *In re Lumber Exchange Bldg. Ltd. Partnership*, 968 F.2d 647 (8th Cir.1992).

The IBEW class appears to have been created for a purpose which appears to be not only legitimate, but necessary as well. Even though a consequence of that classification may be that the debtor created an impaired class that would vote in favor of the plan and permit a cram-down, the classification is valid as is the vote of that class in favor of the plan.

The plan has been confirmed.