**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 15, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ARVIN E. STEPHENS; KAREN J.
STEPHENS, f/d/b/a Ninnekah Quick
Mart,

     Debtors,

------------------------

DILL OIL COMPANY, LLC; DANNY
DILL; NANCY DILL,

     Appellants,

v.

ARVIN E. STEPHENS; KAREN J.
STEPHENS, f/d/b/a Ninnekah Quick
Mart,

     Appellees,

NATIONAL ASSOCIATION OF
CONSUMER BANKRUPTCY
ATTORNEYS,

     Amicus Curiae.

No. 11-6309

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(No. 10-14028-WV)**

---

James Bellingham of Bellingham & Loyd, P.C., Oklahoma City, Oklahoma, for
Appellants.

James Brunson of AG-LAW, PC, Oklahoma City, Oklahoma, for Appellees.

Tara Twomey of National Consumer Bankruptcy Rights Center, San Jose, California, for Amicus Curiae.

_____

Before **KELLY** and **HOLMES**, Circuit Judges, and **MARTINEZ**[*], District Judge.

_____

**KELLY**, Circuit Judge.

_____

This appeal presents an issue of first impression for our circuit: whether the 2005 amendments to the Bankruptcy Code exempt individual Chapter 11 debtors from the absolute priority rule. The bankruptcy court answered this question in the affirmative. It therefore confirmed the Debtors' proposed plan of reorganization over certain creditors' objections that the plan violated the absolute priority rule. On appeal, the bankruptcy appellate panel certified the case for direct appeal. Exercising our jurisdiction under 28 U.S.C. §§ 158(d)(2)(A) & 158(a)(1), we now reverse the bankruptcy court's order confirming the plan and remand for further proceedings.

Background

On June 30, 2010, Arvin E. Stephens and Karen J. Stephens, f/d/b/a/

_____

[*] The Honorable William J. Martinez, United States District Judge, District of Colorado, sitting by designation.

Ninnekah Quick Mart, LLC (collectively, "Debtors") filed for relief under Chapter 11 of the Bankruptcy Code. Aplt. App. 28. Dill Oil Company, LLC and Danny and Nancy Dill (collectively, "the Dills") objected to confirmation on the ground that the proposed plan violated the absolute priority rule ("APR"),[1] which bars junior claimants, including debtors, from retaining any interest in property when a dissenting class of senior creditors has not been paid in full. Id. at 28, 30; see Search Mkt. Direct, Inc. v. Jubber (In re Paige), 685 F.3d 1160, 1183 (10th Cir. 2012) (discussing APR).

Debtors owned a chain of convenience stores for which the Dills were the primary supplier of gasoline and gas station products. Aplt. App. 28. Due to the rising price of gas and a diminishing customer base, Debtors' stores began operating at a loss. Id. at 120. Eventually, Debtors became liable to the Dills for approximately $1.8 million. Id. at 28. In December 2008, Debtors executed

---

[1] The APR originated in the late 1800s as a judicial invention that was primarily employed in the context of railroad reorganizations. See Jonathan C. Lipson, The Expressive Function of Directors' Duties to Creditors, 12 Stan. J.L. Bus. & Fin. 224, 250–52 (2007); see also N. Pac. Ry. Co. v. Boyd, 228 U.S. 482, 504–08 (1913). The Bankruptcy Act of 1898 codified the common law APR by requiring that a reorganization plan be "fair and equitable." In 1952, Congress revoked the "fair and equitable" requirement. H.R. Rep. 82-2320, at 1981–82 (1952), reprinted in 1952 U.S.C.C.A.N. 1960, 1982; see also Pub. L. No. 456, 66 Stat. 420, 433 (1952). However, in 1978, Congress adopted the Bankruptcy Code, which again codified the APR as applied to all reorganizations under Chapter 11 (including individual debtors). See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 202 (1988). Accordingly, "no Chapter 11 reorganization plan [could] be confirmed over the creditors' legitimate objections . . . if it fail[ed] to comply with the [APR]." Id. This rule remained undisputed until BAPCPA's 2005 enactment.

mortgages in favor of the Dills on various tracts of real estate, including a house and farmlands. Id. at 28, 120. The Dills' mortgages, however, were subordinate to existing mortgages on the properties. Id. at 28.

On December 30, 2010, Debtors filed a proposed plan of reorganization. Id. at 17. Pursuant to the plan, the Dills would be paid approximately $15,000 as a secured creditor, but their remaining claim would be considered unsecured. Id. at 28. Under the plan, Debtors would retain possession and control of their property; the Dills would receive a monthly payment for five years, totaling about 1% of their unsecured claim. Id. at 29, 76.

The Dills subsequently filed an objection to Debtors' proposed plan. Id. at 29, 97, 198. Because their vote constituted approximately 96% of Class 8's claims, the Dills' rejection precluded approval of the plan under § 1129(a). Id. at 102, 132.

On May 20, 2011, the bankruptcy court entered an order confirming the plan under § 1129(b)'s "cram down" mechanism. Id. at 17, 29. The Dills argued that the plan was unconfirmable because it violated the APR. Id. at 29. The bankruptcy court rejected this contention, holding instead that the plain language of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") abrogated the APR as to individual Chapter 11 debtors. Id. at 21–22.

The Dills timely filed a notice of appeal on June 1, 2011, seeking reversal of the confirmation order. Id. at 25, 32. The Dills proceeded to the bankruptcy

appellate panel ("BAP"), which sua sponte issued a certification of final order for direct appeal to this court based on its determination that the case presents a question of public importance for which there is no controlling law. Id. at 25. We granted permission to appeal. Id. at 15.

## Discussion

A.    Should this Appeal Be Dismissed Under the Doctrine of Equitable Mootness?

Debtors urge us to dismiss this appeal under the doctrine of equitable mootness, which "allows a court to decline to hear a bankruptcy appeal, even when relief could be granted, if implementing the relief would be inequitable." In re C.W. Mining Co., 641 F.3d 1235, 1239–40 (10th Cir. 2011). Equitable mootness is a discretionary, prudential doctrine. See id. at 1240. We have held that a court should apply the doctrine when reaching the merits would be unfair or impractical, taking into consideration the following questions:

> (1) Has the appellant sought and/or obtained a stay pending appeal? (2) Has the appealed plan been substantially consummated? (3) Will the rights of innocent third parties be adversely affected by reversal of the confirmed plan? (4) Will the public-policy need for reliance on the confirmed bankruptcy plan—and the need for creditors generally to be able to rely on bankruptcy court decisions—be undermined by reversal of the plan? (5) If appellant's challenge were upheld, what would be the likely impact upon a successful reorganization of the debtor? And (6) based upon a quick look at the merits of appellant's challenge to the plan, is [the argument] legally meritorious or equitably compelling?

In re Paige, 584 F.3d 1327, 1339 (10th Cir. 2009).  The party seeking to prevent the court from reaching the merits bears the burden of proving these factors weigh in favor of dismissal.  See id. at 1339–40.

The Dills did not seek a stay pending their appeal, but this factor alone does not preclude the court from granting relief.  See id. at 1339 (citing In re Inv. Co. of the Sw., Inc., 341 B.R. 298, 308 (B.A.P. 10th Cir. 2006)).  And although the plan has, according to Debtors, been substantially consummated, this does not act as a "blanket discharge of [the] judicial duty to examine carefully each request for relief."  In re AOV Indus., Inc., 792 F.2d 1140, 1148 (D.C. Cir. 1986); see also In re Paige, 584 F.3d at 1342 (explaining that substantial consummation is "not dispositive").

Instead, "[t]he effects that reversal will have on *non-party creditors* is probably the foremost concern in our analysis."  In re Paige, 584 F.3d at 1343 (emphasis added); see also In re SI Restructuring, Inc., 542 F.3d 131, 135–36 (5th Cir. 2008).  "The other factors are often given much less weight and, in some cases, completely ignored."  In re Paige, 584 F.3d at 1339.  Here, reversal will likely compel conversion to a Chapter 7 proceeding.  See 11 U.S.C. § 1112; Aplee. Br. 27–28.  According to Debtors, the Dills will receive little or nothing under Chapter 7 due to superior liens on non-exempt assets.  See Aplee. Br. 28. But the Dills' argument—which Debtors have not disputed— is that under Chapter 7 either: 1) the secured creditors will receive their property; or 2)

Debtors will reaffirm the creditors' secured debts and retain the property. See Aplt. R. Br. 14. In either scenario, we find it unlikely that non-party creditors will be adversely affected in any significant way, and Debtors have failed to convince us otherwise. See In re Paige, 584 F.3d at 1343–44.

Although we recognize that Debtors have devoted substantial time and resources toward the plan's implementation, and we appreciate that reversing the confirmation order will likely preclude a successful reorganization, we also note that the Dills have approximately $1.8 million at stake. Moreover, this case involves a "matter of public importance" for which "there is no controlling decision" in this circuit, Aplt. App. 25, and we believe the Dills' argument is legally meritorious. As the BAP emphasized in its certification order, "[u]ntil the meaning of the BAPCPA amendments to Chapter 11 is clarified, debtors and creditors in every individual Chapter 11 case must anticipate the possibility of the expense and delay associated with litigation over this issue." Id. at 34. Because of the private and public interest in resolving this legal issue, we decline to apply the doctrine of equitable mootness. See In re Paige, 584 F.3d at 1348.

B.    Does BAPCPA Repeal the Absolute Priority Rule with Respect to Individual Chapter 11 Debtors?

This appeal presents a question of statutory interpretation. Accordingly, we review the bankruptcy court's determination de novo. In re Kirkland, 572 F.3d 838, 840 (10th Cir. 2009). "[T]he starting point is always the language of the

- 7 -

statute itself.  If the language is clear and unambiguous, the plain meaning of the statute controls."  United States v. Quarrell, 310 F.3d 664, 669 (10th Cir. 2002) (citation omitted).  If, on the other hand, the text is ambiguous—i.e., "capable of being understood by reasonably well-informed persons in two or more different senses"—we must inquire further to discern Congress's intent.  See id. (quotation omitted).

### 1.    Is the statutory language clear and unambiguous?

We begin our analysis by focusing exclusively on the language of the Bankruptcy Code.  See Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716, 723 (2011).  Section 1129 of the Code sets out the general requirements for confirmation of a reorganization plan.  Section 1129(a) allows for confirmation where each class of creditors consents.  Alternatively, § 1129(b) provides a "cram-down" mechanism, whereby a plan may be confirmed without the consent of each class if, among other things, the plan is "fair and equitable."  Section 1129 outlines the "fair and equitable" criteria, which include the absolute priority rule.  Specifically, § 1129(b)(2)(B)(ii), as amended by BAPCPA, provides that:

> the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115*, subject to the requirements of subsection (a)(14) of this section.

(emphasis added).

Section 1115, which BAPCPA added, in turn states:

(a) *In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541*[2]—

    (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or controverted to a case under chapter 7, 12, or 13, whichever occurs first; and

    (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or controverted to a case under chapter 7, 12, or 13, whichever occurs first.

(b) Except as provided in section 1104 or a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

(emphasis added).

Although a number of courts have held this language to be unambiguous, they have reached starkly different conclusions regarding the "plain" meaning. Compare SPCP Grp., LLC v. Biggins, 465 B.R. 316, 322 (M.D. Fla. 2011) ("The plain reading of this statute" is that § 1115 "includes . . . property specified in section 541."), with In re Steedley, No. 09-50654, 2010 WL 3528599, at *2 (Bankr. S.D. Ga. Aug. 27, 2010) ("Nothing in the plain language of § 1115 suggests that it subsumes § 541."). The very existence of this dichotomy seems indicative of the text's ambiguity. Indeed, several courts have recognized that §§ 1115 and 1129(b)(2)(B)(ii) are susceptible to two different yet plausible

---

[2] Section 541 defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. Section 103, in turn, provides that § 541 applies in Chapter 11 cases, including those which involve individual debtors. See 11 U.S.C. § 103(a).

interpretations.  See, e.g., In re Maharaj, 681 F.3d 558, 569 (4th Cir. 2012); In re Lindsey, 453 B.R. 886, 903 (Bankr. E.D. Tenn. 2011).

To date, the Bankruptcy Appellate Panel for the Ninth Circuit and five bankruptcy courts (one of which was affirmed by a district court) have adopted a "broad view," holding that the BAPCPA amendments eliminate the APR as applied to an individual's *entire* estate.[3]  In contrast, the Fourth Circuit and seventeen bankruptcy courts have reached the opposite conclusion, holding that the BAPCPA amendments only exempt from the APR that property which § 1115 *adds* to an individual estate —not the pre-petition property already defined by § 541.[4]

---

[3] In re Friedman, 466 B.R. 471 (B.A.P. 9th Cir. 2012); SPCP Grp., LLC v. Biggins, 465 B.R. 316 (M.D. Fla. 2011) (affirming unpublished decision of bankruptcy court); In re Shat, 424 B.R. 854 (Bankr. D. Nev. 2010); In re Johnson, 402 B.R. 851 (Bankr. N.D. Ind. 2009); In re Roedemeier, 374 B.R. 264 (Bankr. D. Kan. 2007); In re Tegeder, 369 B.R. 477 (Bankr. D. Neb. 2007).

[4] In re Maharaj, 681 F.3d 558 (4th Cir. 2012) (affirming the bankruptcy court's decision in 449 B.R. 484 (Bankr. E.D. Va. 2011)); In re Lee Min Ho Chen, No. 11-08170, 2012 WL 5463256 (Bankr. D. P.R. Nov. 9, 2012); In re Tucker, 479 B.R. 873 (Bankr. D. Or. 2012); In re Arnold, 471 B.R. 578 (Bankr. C.D. Cal. 2012); In re Lively, 467 B.R. 884 (Bankr. S.D. Tex. 2012); In re Borton, No. 09-00196-TLM, 2011 WL 5439285 (Bankr. D. Idaho Nov. 9, 2011); In re Lindsey, 453 B.R. 886 (Bankr. E.D. Tenn. 2011); In re Kamell, 451 B.R. 505 (Bankr. C.D. Cal. 2011); In re Draiman, 450 B.R. 777 (Bankr. N.D. Ill. 2011); In re Walsh, 447 B.R. 45 (Bankr. D. Mass. 2011); In re Stephens, 445 B.R. 816 (Bankr. S.D. Tex. 2011); In re Karlovich, 456 B.R. 677 (Bankr. S.D. Cal. 2010); In re Gelin, 437 B.R. 435 (Bankr. M.D. Fla. 2010); In re Steedley, No. 09-50654, 2010 WL 3528599 (Bankr. S.D. Ga. Aug. 27, 2010); In re Mullins, 435 B.R. 352 (Bankr. W.D. Va. 2010); In re Gbadebo, 431 B.R. 222 (Bankr. N.D. Cal. 2010); see also In re Friedman, 466 B.R. at 476 (discussing the bankruptcy court's determination—in an unpublished February 17, 2011 order—that the APR

According to the broad view, § 1115 incorporates and supercedes § 541. Under § 1115, an individual's estate includes post-petition property and earnings in addition to the pre-petition property established by § 541. In re Tegeder, 369 B.R. 477, 480 (Bankr. D. Neb. 2007); see also In re Shat, 424 B.R. 854, 863 (Bankr. D. Nev. 2010) ("Initially, Section 1115 creates a baseline estate of all the property covered by Section 541. It then adds to that [post-petition property]."). When § 1129(b)(2)(B)(ii) references the property "included by" § 1115, it "refer[s] to all property Section 1115 itself references." In re Shat, 424 B.R. at 863. Section 1115 thus absorbs § 541 for individual Chapter 11 cases. Id. at 865. Therefore, the APR no longer applies to *any* property of an individual debtor's estate.

In contrast, the narrow view holds that § 1115 merely adds to—but does not replace—§ 541's definition of estate property for individual debtors. See, e.g., In re Draiman, 450 B.R. 777, 821 (Bankr. N.D. Ill. 2011). Section 1115 "includes" in the estate only that property which was not already included by § 541. See In re Gbadebo, 431 B.R. 222, 229 (Bankr. N.D. Cal. 2010). In other words, § 1115 includes only post-petition property and earnings. In re Draiman, 450 B.R. at 821. In support of the narrow view, several courts have pointed to § 1115's grammatical structure. See, e.g., In re Arnold, 471 B.R. 578, 602 (Bankr. C.D. Cal. 2012) (explaining that because the phrase, "in addition to the property

applies to individual Chapter 11 debtors).

specified in section 541" is "not the direct object of the transitive verb, 'includes,'" the phrase therefore "is not an answer to the question what is included as 'property of the estate' under § 1115"). Accordingly, only post-petition property added by § 1115 is exempt from the APR; the APR continues to apply to § 541's pre-petition property.

After examining the divergent interpretations of the statutory language, we agree with the Fourth Circuit that "either construction is plausible." In re Maharaj, 681 F.3d at 569. In light of this linguistic ambiguity, we endeavor to ascertain Congress's intent. See United States v. Hohri, 482 U.S. 64, 69–71 (1987).

2.      Is there a clear Congressional intent to repeal the absolute priority rule as applied to individual Chapter 11 debtors?

Nowhere in BAPCPA's sparse legislative history is there an explanation of what changes result from § 1115. See In re Lindsey, 453 B.R. at 903; Bruce A. Markell, The Sub Rosa Subchapter: Individual Debtors in Chapter 11 After BAPCPA, 2007 U. Ill. L. Rev. 67, 90. Consequently, courts have reached opposite conclusions regarding the legislative objective. Compare In re Shat, 424 B.R. at 862–65, with In re Gbadebo, 431 B.R. at 229–30. In deciphering Congress's intent, we recognize BAPCPA's aim of curbing the abusive practices of unscrupulous debtors, see H.R. Rep. No. 109-31, pt. 1, at 3–5 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 90–92, but we remain mindful that "a central purpose of the Code" is to provide the honest but unfortunate debtor with a "fresh start,"

Grogan v. Garner, 498 U.S. 279, 286–87 (1991) (quotations and citation omitted). This inherent tension makes it difficult to identify a singular objective behind § 1115.

Advocates of the broad view emphasize that the BAPCPA amendments evince an intent to model Chapter 11 on Chapter 13, which has no absolute priority rule. See In re Friedman, 466 B.R. at 483; In re Shat, 424 B.R. at 868. In support, they cite a number of provisions that are essentially copied from Chapter 13. See, e.g., In re Roedemeier, 374 B.R. 264, 275–76 (Bankr. D. Kan. 2007). Further, proponents of the broad view emphasize that abolishing the APR with respect to individual debtors does not leave unsecured creditors without any power or protection. Instead, unsecured creditors can rely on the safeguards of § 1129(a)(15)'s disposable income test, see In re Shat, 424 B.R. at 863–64, and § 1129(a)(7)'s "best interests" test, see Amicus Br. of Nat'l Ass'n of Consumer Bankr. Attorneys at 6.

In contrast, those ascribing to the narrow view argue that, "[e]ach one of these new provisions," even where modeled on Chapter 13, "appears designed to impose *greater* burdens on individual chapter 11 debtor's rights so as to ensure a greater payout to creditors." In re Gbadebo, 431 B.R. at 229 (emphasis added); see also H.R. Rep. No. 109-31, pt. 1, at 2–5, 80–81. Narrow view proponents urge that if Congress intended to abolish the APR with respect to individual debtors, "it would have done so in a far less convoluted way." In re Maharaj, 681 F.3d at 565–66. For instance, Congress could have raised Chapter 13's debt

ceiling or expressly exempted individual debtors at the beginning of § 1129(b)(2)(B)(ii). See In re Karlovich, 456 B.R. 677, 682 (Bankr. S.D. Cal. 2010). Moreover, BAPCPA's legislative history lists several debtor protections but makes no mention of eliminating the APR. See H.R. Rep. No. 109-31, pt. 1, at 2, 17–18. Advocates for the narrow view argue that, had Congress intended such a drastic change, it surely would have included the amendment in its list of debtor protections. See In re Maharaj, 681 F.3d at 572. Instead, the amendments are best understood as preserving the status quo. See, e.g., id. at 569–70 (noting that the exemption of post-petition property and earnings ensures that the APR operates as it did prior to BAPCPA's passage).

Because both the statutory language and Congress's intent are ambiguous, we heed the presumption against implied repeal. "[R]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 662 (2007) (quotations omitted). Where a party contends "that legislative action changed settled law," that party "has the burden of showing that the legislature intended such a change." Green v. Bock Laundry Mach. Co., 490 U.S. 504, 521 (1989). These interpretive principles are particularly critical in bankruptcy cases, where parties rely on settled rules in conducting and structuring business. Thus, "[p]re-BAPCPA bankruptcy practice is telling because we will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure."

<u>Hamilton v. Lanning</u>, 130 S. Ct. 2464, 2473 (2010) (quotation omitted).  Here, the statutory language and legislative history lack any clear indication that Congress intended to erode a pillar of creditor bankruptcy protection.  <u>See</u> <u>Hui v. Castaneda</u>, 130 S. Ct. 1845, 1853 (2010); <u>Dewsnup v. Timm</u>, 502 U.S. 410, 419–20 (1992).  Especially in light of the fact that Congress *has* expressly repealed the APR in the past, <u>see</u> H.R. Rep. 82-2320, at 1981–82, we decline to find an implied repeal here.

We therefore REVERSE the bankruptcy court's order confirming the plan and REMAND for further proceedings.