# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 15-6001

_____

In re: Suzette Woodward

*Debtor*

------------------------------

Heritage Bank

*Creditor - Appellant*

v.

Suzette Woodward

*Debtor - Appellee*

------------------------------

National Association of Consumer Bankruptcy Attorneys

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States Bankruptcy Court
for the District of Nebraska - Lincoln

_____

Submitted: July 22, 2015
Filed: August 13, 2015

_____

Before FEDERMAN, Chief Judge, SCHERMER, and SHODEEN, Bankruptcy Judges.

————————

SCHERMER, Bankruptcy Judge

Heritage Bank (Heritage) appeals from a Bankruptcy Court order confirming Suzette Woodward's (Debtor) Fifth Amended Chapter 11 Plan. The confirmation order is a final order of the Bankruptcy Court over which we have jurisdiction on appeal. *See* 28 U.S.C. § 158(b). The Notice of Appeal and Statement of Election also references an April 29, 2014 order denying the Debtor's Third Amended Plan. We believe that the denial of confirmation of the Debtor's Third Amended Plan is not a final order and cannot be the subject of this appeal. *Bullard v. Blue Hills Bank*, 135 S.Ct. 1686 (2015). Therefore, the sole basis of this appeal is the order confirming the Debtor's Fifth Amended Chapter 11 Plan. For the following reasons, the confirmation order is reversed and the case is remanded for a new confirmation hearing.

## ISSUES

1. Whether an impaired class of claims has accepted the Debtor's Fifth Amended Plan.

2. Whether 11 U.S.C. §§ 1129(b)(2)(B)(ii)'s absolute priority rule prevents individual debtors in Chapter 11 from retaining property acquired prior to the filing of the bankruptcy petition when not all creditors' claims will be paid in full.

3. Whether the value of the property to be distributed under the Fifth Amended Plan is less than the Debtor's disposable income.

# BACKGROUND

The Debtor is a practicing pathologist in Grand Island, Nebraska. She is a member of Pathology Specialists, LLC. On April 4, 2011, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. Heritage holds an allowed, unsecured claim in the amount of $270,566.00.

On May 15, 2012, the Debtor acquired property at 2604 Arrowhead Road in Grand Island, Nebraska as her principal residence from Leland and Marie Elliott (Elliotts). As part of the purchase price, the Debtor signed a promissory note in favor of the Elliotts in the amount of $169,900, and granted the Elliotts a security interest in the property. The Elliotts perfected their lien in the Debtor's property. In addition to regular monthly payments, the terms of the note required the Debtor to make a balloon payment on June 1, 2013. The Elliotts subsequently agreed to extend the date on which the balloon payment was due by one year.

The case was converted to a proceeding under Chapter 11 on September 10, 2012. The Elliotts filed a proof of claim asserting secured status with respect to the principal residence. Heritage objected to the Elliotts' proof of claim, not because it arose postpetition, but based on the timeliness of its filing. The Bankruptcy Court overruled the objection and allowed the claim in the amount of $158,724.54. Heritage did not appeal the order allowing the claim, but instead continued to object to the Elliotts' voting on the plan as an impaired class, on the ground that the claim was a postpetition claim. At plan confirmation, the Bankruptcy Court essentially held that the Elliotts had an allowed claim, that the plan altered the treatment of their claim, and, thus, that the Elliotts were an impaired class entitled to the vote on the plan.

The Bankruptcy Court entered an order confirming the Debtor's Fifth Amended Plan on December 23, 2014. The Elliotts, the sole members of their class, voted in favor of the plan. No other impaired classes voted to accept the plan. On appeal,

3

Heritage argues that the plan should not have been confirmed because: (1) an impaired class did not accept it; (2) it violated the absolute priority rule; and (3) it does not call for payment of all of the Debtor's disposable income.

**STANDARD OF REVIEW**

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Walker*, 528 B.R. 418, 427 (B.A.P. 8th Cir. 2015) (citing *Heide v. Juve* (*In re Juve*), 761 F.3d 847, 851 (8th Cir.2014)). Determining whether the Elliotts may vote on the plan and whether the absolute priority rule applies in individual Chapter 11 cases involve purely legal questions of statutory interpretation. We exercise de novo review with respect to each issue. *In re Johnson*, 509 B.R. 213, 214-15 (B.A.P. 8th Cir. 2014) (citing *Graven v. Fink* (*In re Graven*), 936 F.2d 378, 384-85 (8th Cir.1991). We find it unnecessary to reach the third issue.

**DISCUSSION**

**1. <u>An Impaired Class of Claims has Accepted the Plan</u>**

Heritage asserts on appeal that since the Debtor's obligation to the Elliotts arose postpetition, the Elliotts were not "creditors," as that term is defined in § 101(10), and so the Elliotts were not entitled to vote on the plan. Thus, Heritage asserts, the Bankruptcy Court erred in treating them as a consenting class under § 1129(a)(10). We disagree and think that Heritage's argument misses the mark under the circumstances of this case.

The issue is not whether the Elliotts were "creditors" under § 101(10), as Heritage asserts, because the time to litigate the Elliotts' creditor status has long since passed. As a result, Heritage is now foreclosed from raising the argument on appeal. Although it is true that Heritage objected to the Elliotts' proof of claim, the objection

4

was based on the timeliness of its filing. Heritage never objected to the claim's foundation in postpetition debt. Heritage did not appeal the Bankruptcy Court's order allowing the Elliotts' claim, and review is now precluded by principles of *res judicata*. Heritage may not raise the issue now. We hold that the Elliotts have an allowed claim.

We do question, however, whether the Elliotts *should have been* holders of an allowed claim because we are not convinced that the Bankruptcy Code allows for a postpetition claim such as this. *See, e.g.,* Bankr. Law Manual § 6:24 (5th ed.) (although recognizing that the Code provides for specific, identified, exceptions to the rule, stating that "[i]n general, only those claims that exist as of the date of the filing of the bankruptcy petition, commonly referred to as prepetition claims, may be allowed as claims against the estate.").

Nevertheless, because the Elliotts were the "holders of a[n] [allowed] claim," they were entitled to vote on the plan under the plain language of § 1126(a). That section provides that *"[t]he holder of a claim or interest allowed under section 502 of this title may accept or reject a plan"* (emphasis added). Furthermore, § 1129(a)(10) provides that, in order to confirm a plan, "[if] a class of claims is impaired under the plan, at least one *class of claims* that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider" (emphasis added). "[A] class of claims or interests is impaired under a plan, unless," as relevant here, the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124. We believe that the Elliotts' claim is impaired. They agreed to alter their rights under the note when they extended the date on which the balloon payment was due. In so doing, the Elliotts also waived § 1123(b)(5)'s prohibition against the modification of security interests in a debtor's principal residence. The antimodification provision can be waived by the creditor holding such

a claim.[1] *See, e.g.*, *In re Arns*, 372 B.R. 876, 882-83 (Bankr. N.D. Ill. 2007) (holding that a lender can waive the antimodification provision in § 1123 by agreeing to the plan and not pursuing an objection to confirmation); *In re Canovali*, 2011 WL 307374 at 6 (Bankr. E.D. N.C. Jan. 27, 2011) (same); *In re Mayberry*, 487 B.R. 44, 46 (Bankr. D. Mass. 2013) ("*Absent the creditor's agreement* the debtor cannot obtain confirmation of a chapter 13 plan which proposes to modify a claim secured by the debtor's principal residence. *If the creditor opts to agree to different treatment, it is certainly free to do so*.") (quoting *In re Wofford*, 449 B.R. 362, 365 (Bankr. W.D. Wis. 2011) (emphasis added); *In re Smith*, 409 B.R. 1, 4 (Bankr. D. N.H. 2009) ("[N]othing prevents a secured creditor from consenting to the modification of its claim.").

Heritage cites *In re Kliegl Bros. Universal Electric Stage Lighting Co.*, which held that, since § 1126(a) provides that only the holder of a claim or interest allowed under § 502 may accept or reject a plan, and since postpetition secured lenders are not mentioned or implied in § 502, the class containing such a postpetition lender as its sole member was not entitled to vote on the plan. 149 B.R. 306, 307 (Bankr. E.D. N.Y. 1992) (citations omitted). However, in contrast to this case, *Kliegl Bros*. did not say whether the lender there actually had an allowed claim, as the Elliotts do here. Again, maybe the Elliotts should not have had an allowed claim, but the fact is, they do. To the extent *Kliegl Bros.* can be read to prohibit the Elliotts – as the holders of an allowed claim impaired by the plan – from voting on the plan, we believe such a reading is contrary to the language of the statutes discussed above.

Consequently, we do not believe that the Bankruptcy Court erred in permitting the Elliotts' ratifying vote to serve as the sole basis for the satisfaction of §

---

[1] The modification of a residential mortgage such as this could, conceivably, raise good faith issues if the modification was done to create a favorable impaired class, but good faith is not an issue raised in this appeal.

1129(a)(10)'s requirement that an impaired class of claim holders vote in favor of the plan. As the holders of an allowed claim and sole members of their impaired class, the Elliotts' ratifying vote satisfied § 1129(a)(10).

## 2. The Absolute Priority Rule Applies in Individual Chapter 11 Cases

"[T]he absolute priority rule 'provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a reorganization plan." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988) (quoting *Ahlers v. Northwest Bank (In re Ahlers)*, 794 F.2d 388, 401 (8th Cir. 1986)); 11 U.S.C. § 1129(b)(2)(B)(ii). However, Congress amended the bankruptcy code in 2005 to include a statutory exception permitting individual Chapter 11 debtors to retain property *included in the estate under section 1115…*" without first paying creditors (emphasis added). 11 U.S.C. § 1129(b)(2)(B)(ii). Although most courts agree that § 1115 defines "property of the estate" as property and income acquired after commencement of the case in addition to the prepetition property specified in § 541, defining what "property [is] included in the estate under section 1115" has divided courts. Whether prepetition property is "property included in the estate under section 1115" will ultimately determine whether the absolute priority rule has any continuing application in individual debtor Chapter 11 cases.

In order to determine whether clarity exists in the murky jurisprudence surrounding the absolute priority rule, we think an overview of Congress's thinking with respect to individual Chapter 11 cases would be illuminating. Congress grafted many aspects of Chapter 13 onto the individual Chapter 11 framework. For instance, § 1123(b)(5) generally mimics § 1322(b)(2)'s treatment of claims secured only by the Debtor's principal residence. In addition, § 1129(a)(15) imports § 1325(a)(5)'s concept of disposable income, and § 1141(d)(5) does the same with respect to § 1328(a)'s limitations on discharge. Finally, like § 1306, § 1115 brings into the estate postpetition earnings and property. Other similarities exist.

Although Congress was able to import many elements of Chapter 13 into the individual Chapter 11 arena, it was not a perfect fit. In fact, in certain respects, it did not fit at all. The absolute priority rule states, in full, that:

> [T]he holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section [relating to payment of domestic support obligations].

§ 1129(b)(2)(B)(ii). We suggest that there is no "interest" holder in an individual Chapter 11 case. The concept plainly applies to equity holders in the corporate or partnership Chapter 11 context, for example, but we do not believe that there is an *individual* Chapter 11 analogue. *Ahlers* simply assumed, without discussion, that the Debtors were interest holders. *Northwest Bank Worthington v. Ahlers*, 485 U.S. at 966. But how can one hold an interest in oneself? We do not think this is possible. In any event, one cannot avoid the fact that this is a Chapter 11 case. If Congress intended for all Chapter 13 specific law to apply in individual Chapter 11 cases, it could have afforded higher income debtors the ability to seek reorganization under Chapter 13. It did not.

We hold that the absolute priority rule still applies in individual Chapter 11 cases to prevent debtors from retaining prepetition property. Our holding is supported by: (1) the language and context of § 1129(b)(2)(B)(ii) and 1115; (2) the absence of a clear indication by Congress of an intent to abrogate; and (3) the weight of existing authority.

## A. The Relevant Statutory Language and Context Supports the Absolute Priority Rule's Continuing Application

"In determining the meaning of a statutory provision, 'we look first to its language, giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 134 S. Ct. 1158, 1165 (2014) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). "Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 135 S. Ct. 1074, 1081-82 (2015) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

The language of §§ 1129 and 1115 favors the absolute priority rule's continuing application. That postpetition property is the only "property included in the estate under section 1115" follows from § 1129's use of the word "included." "The action described by 'include' is either 'to take in as a part, an element, or a member …[C]onverted into the active voice, § 1129(b)(2)(B)(ii) refers to property that § 1115 includes in the estate, which naturally reads as 'property that § 1115 takes into the estate… ." *Ice House America, LLC v. Cardin* (*In re Cardin*), 751 F.3d 739 (6th Cir. 2014). Contextually, the only property that § 1115 can take into the estate is postpetition property and income because prepetition property is already part of the estate under § 541. "Section 1115 cannot take into the estate property that was already there [prepetition property under § 541] … what § 1115 takes into the estate-is property 'that the debtor acquires after the commencement of the case." *Id*.

The text of § 1115(a) leads to the same conclusion. It states that "property of the estate includes, *in addition to the property specified in section 541–* all property of the kind specified in section 541 that the debtor acquires after the commencement of the case… ." (emphasis added). The inclusion of "in addition to" as a modification

9

of the "property specified in section 541" separates the "property specified in section 541" from all of the other property mentioned in § 1115, thereby channeling all of the other property into "property included in the estate under section 1115" while filtering from this definition "the property specified in section 541." In other words,

> [T]he phrase, 'the property specified in section 541' cannot be viewed in isolation. The phrase is part of the prepositional phrase beginning with 'in addition to,' and is thus not the direct object of the transitive verb, 'includes,' so it does not relate to the subject of the sentence, 'property of the estate… .

*In re Arnold*, 471 B.R. 578, 602 (Bankr. C.D. Cal. 2012).

The broader statutory context provides further support. "Because § 541 independently includes all § 541 property in the estate, it would be a redundancy to 'reinclude' that property through the § 1115 language." *In re Maharaj*, 681 F.3d 569 (4th Cir. 2012). Consequently, we are left to conclude that the "property specified in section 541" – that is, prepetition property – is not "property included in the estate under section 1115" that is excluded from the absolute priority rule. Section 541 cannot operate as a "subset" of § 1115 as some "broad view" courts have suggested. *Id*. at 569 (discussing *Friedman v. P+P, LLC* (*In re Friedman*), 466 B.R. 471 (B.A.P. 9th Cir. 2012)). Therefore, the statutory language and context suggests that Congress did not abrogate the absolute priority rule in individual Chapter 11 cases.

## B. Congress has not Evinced a Clear Indication of an Intent to Abrogate the Absolute Priority Rule

The concept of the absolute priority rule was first articulated in 1913. *N. Pac. R. Co. V. Boyd*, 228 U.S. 482, 508 (1913). We believe that Congress would have employed clearer language to abrogate the absolute priority rule if it had so intended.

It could have "expressly exempted individual debtors at the beginning of § 1129(b)(2)(B)(ii)." *Dill Oil Company, LLC v. Stephens* (*In re Stephens*), 704 F.3d 1286 (10th Cir. 2013). It could have omitted "in addition to the property specified in section 541" from the introductory clause of § 1115(a), while including the words "before and" directly preceding "after" in (a)(1) of the statute. The language of the statute, then, would read, "property of the estate includes [comma and text omitted] – all property of the kind specified in section 541 that the debtor acquires before and after the commencement of the case." Congress did not make these changes, however, and we see no reason to read them into §§ 1129 or 1115.

Furthermore, any mention of the absolute priority rule's abrogation is conspicuously absent in The Bankruptcy Abuse and Prevention Act of 2005's (BAPCPA) legislative history.  PL 109-8, April 20, 2005, 119 Stat 23." BAPCPA's legislative history lists several debtor protections but makes no mention of eliminating the APR … had Congress intended such a drastic change, it surely would have included the amendment in its list of debtor protections. Instead, the amendments are best understood as preserving the status quo." *Stephens*, 704 F.3d at 1286 (citing H.R. REP. NO. 109-31, pt. 1, at 2, 17-18 and *Maharaj*, 681 F.3d at 572). "[W]e will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *In re Lively*, 717 F.3d 406 (5th Cir. 2013) (quoting *Hamilton v. Lanning*, 560 U.S. 505, 517 (2010)).

## C. The Overwhelming Weight of Authority has Upheld the Absolute Priority Rule

Finally, the majority of courts to address the issue, including the Fourth, Fifth, Sixth, and Tenth Circuits, follow the "narrow view." *See Ice House*, 751 F.3d at 734; *Lively*, 717 F.3d at 406; *Stephens*, 704 F.3d at 1279; *Maharaj*, 681 F.3d at 558. They have held, as we do today, that § 1115 merely augments existing estate property as set out in § 541 by drawing in postpetition property and income. In fact, no circuit

11

court has ruled otherwise. Therefore, we are comfortable in concluding that the absolute priority rule still has application in individual Chapter 11 cases.

## 3. Determining whether the Debtor is Contributing Less than Her Disposable Income to the Plan is Unnecessary

When the holder of an allowed unsecured claim objects to plan confirmation in a Chapter 11 case involving an individual debtor, § 1129(a)(15) requires that all unsecured claims be paid in full or that the debtor pay all of her disposable income into the plan for five years. "[D]isposable income" is defined in § 1325(b)(2) as "current monthly income received by the Debtor ... less than amounts reasonably necessary to be expended ... ." The Bankruptcy Court determined the Debtor's income and the reasonableness of her expenses.

Heritage, however, believes that the Debtor's income tax return should be used to determine "current monthly income" rather than an average of her previous six monthly "draws" from Pathology Specialists, LLC. Heritage also disputes the reasonableness of the Debtor's expenses. Because we have determined that the absolute priority rule applies to individuals in Chapter 11, it is unnecessary to address the Bankruptcy Court's determination of the Debtor's disposable income. The Debtor's "disposable income" as defined in § 1325(b)(2) is "property included in the estate under section 1115" which the Debtor may retain. Heritage stated at oral argument that it will only accept full payment on its claim. Therefore, any determination of disposable income on appeal is unnecessary.

## CONCLUSION

For the reasons stated above, we remand the case for a new confirmation hearing.

————————